**TRADERS & GENERAL INS. CO. v.
RHODABARGER.**

No. 3634.

Court of Civil Appeals of Texas. El Paso.
Oct. 7, 1937.

Rehearing Denied Oct. 28, 1937.

Simpson, Dorenfield & Fillingim, of Amarillo, and Claude Williams and Lightfoot, Robertson, Saunders & Gano, all of Fort Worth, for plaintiff in error.

H. E. Wassell and A. T. Folsom, both of Wink, for defendant in error.

NEALON, Chief Justice.

May 26, 1934, Harry Rhodabarger, the then husband of defendant in error, Mildred Rhodabarger, hereinafter called intervener, filed suit in the district court of Ward county, being cause No. 4192 therein, wherein he appealed from an order of the Industrial Accident Board of the state of Texas, made May 10, 1934. Plaintiff in error, hereinafter called the company, was the defendant in said suit. Rhodabarger pleaded that while in the employ of Garrett J. Donnelly he was injured, and that the company was the insurance carrier for his employer at said time. His injuries were alleged with considerable particularity. He alleged that prior to the accident he was a strong, healthy, robust man, and capable of performing the work of an oil field worker, "or any kind of manual labor," and that by reason of his injuries he had become totally and permanently disabled "with reference to performing manual labor." The company answered, and a trial was had before a jury which resulted in a verdict for Rhodabarger for $5,661.34. The court entered judgment upon the verdict. Subsequently the case was appealed to this court and judgment was affirmed. 93 S.W.(2d) 1180. Application for writ of error was dismissed by the Supreme Court.

July 30, 1936, plaintiff in error filed suit in the district court of Ward county, being case No. 4420 on the docket of said court, alleging that said judgment was fraudulently procured as a result of a conspiracy between said Rhodabarger, his attorney, and others, and seeking that it be set aside and held for naught; and, in the meantime, praying for temporary writ of injunction, with the further prayer that upon final hearing the writ be made permanent.

Briefly summarized, the charges of fraud were these: That the injuries of the said Rhodabarger were slight; that they were trivial and minor in character, and not of such nature and character as to render the said Rhodabarger totally and permanently disabled; that he filed a claim with the Industrial Accident Board of Texas in part pursuance of his fraudulent design and thereafter filed the suit hereinbefore referred to; that the allegations of his pleadings with respect to his injuries were all false and were deliberately, knowingly, and fraudulently made by his attorney, who was charged to be one of the conspirators, for the express purpose of conferring jurisdiction upon the district court of Ward county, and of deceiving said court and of defrauding plaintiff in error; that the company made diligent inquiry to ascertain Rhodabarger's real condition with respect to whether or not he was totally and permanently disabled, but that he feigned his injuries and pretended that he suffered severe ones, and so feigned them that their real character could not be detected by the usual and ordinary medical tests; that when the doctors representing the company examined him, he not only successfully feigned his injuries, but, in addition, gave a false history of his injuries and the extent thereof to said doctors; that "said doctors were relying upon the false history of the injuries received and result thereof, were misled and deceived by the said Harry Rhodabarger, and as a result thereof they based their opinion as to his disability upon what (the said) Harry Rhodabarger had wrongfully and falsely told them, resulting in an improper diagnosis of the case by them;" that he misled the company by concealing himself and refusing to be interviewed concerning his injuries and his ability to work; that he placed himself beyond its reach; that though his petition recited that he was a resident citizen of Winkler county, the company sent numerous agents and representatives to said county for the purpose of seeing and interviewing him to ascertain his true condition; but that on each and every occasion when they attempted to see him, he would be gone and no one knew where he was located; that when they called upon his attorney, J. B. Cotten, the latter advised them that he did not know of his client's whereabouts; that Rhodabarger testified upon the trial that prior to his injuries on August 4, 1933, his physical condition was good, that he had never received any prior back or foot injury of any kind or character, whereas in fact he received an in-

jury to his foot in 1931 and had consulted a physician about it; that though he testified at the trial that he had done no work subsequent to his injury except about nine days cleaning out a well near Big Springs, Tex., and had tried to work for about four days near Pampa, Tex., but had been forced to discontinue his work on account of his injuries, he had actually worked during May, June, and July, 1934 (number of days not given), two days in June, 1934, and four days in July, 1934, twelve days in December, 1934, eight days in January, 1935, and twelve days in February, 1935, and that he did not complain of his physical condition while doing said work; that by his feigning and his false history he deceived one of the physicians who testified in his behalf, and that the other either testified corruptly or was likewise so deceived; and that at all times after his alleged injury he was fully able to do and perform manual labor, and fully able and capable of obtaining and retaining work in the oil fields, and was at the very time of the trial engaged in the actual operation of "drilling an oil well as a driller thereof, doing and performing all the duties required of him as a driller"; that though he testified at the trial that subsequent to his injuries he had been examined by no physician except his own, the truth was he had been examined by several, who were named in the pleadings, and that they found that he was fully able to work, it being charged that said physicians examined him for companies with which he sought employment.

August 17, 1936, Mildred Rhodabarger, defendant in error, filed an intervention in said suit No. 4420, claiming an interest in said judgment to the extent of $2,300, and setting up in detail her denials of the material allegations of the petition filed by plaintiff in error. Her claim arose out of the fact that in cause No. 395, in the district court of Crane county, on the 10th day of July, 1936, a decree of divorce was entered in her favor dissolving her marriage with the said Harry Rhodabarger and awarding her $2,300 of said judgment —$1,800 being on account of her one-half community interest therein, and $500 being awarded for the care of the children of said marriage.

Subsequent to the filing of said intervention plaintiff in error made a compromise with the said Harry Rhodabarger and his attorneys, paying them the sum of $2,500.

There was evidence that the representatives of plaintiff in error were at that time told about said award made in the Crane county suit, and about the claims of intervener in the premises, and were warned that she would probably urge her claim; and that it offered to pay $300 additional for her signature to the release.

August 25, 1936, the company dismissed its cause of action in cause No. 4420.

October 26, 1936, plaintiff in error filed its first original amended answer to said plea of intervention. This answer was filed subject to its plea of privilege to be sued in Dallas county, the domicile of said corporation. This answer consisted of general demurrer, general denial, and various special answers including the compromise agreement entered into in Dallas on July 31, 1936, which plaintiff in error claimed settled the entire matter in controversy, and was binding upon defendant in error; and as a part of its defensive pleading the company adopted its original petition in said suit No. 4420.

The court sustained intervener's exception to the company's special answer seeking cancellation of the original judgment in cause No. 4420 upon account of the alleged fraud and perjury of Harry Rhodabarger.

The company filed and urged its motion for continuance, which was by the court overruled.

It demanded a jury upon the issues raised by its plea of privilege and intervener's controverting affidavit. The court ruled that the same jury should pass upon the plea of privilege and upon the merits of the case. Subsequently the plea of privilege was withdrawn from the jury's consideration, the court holding as a matter of law that the venue was properly laid in Ward county.

The jury answered affirmatively the only special issue submitted, which read as follows:

"Do you find from a preponderance of the evidence that the cross-defendant, Traders and General Insurance Company, had actual knowledge of the rendition of the judgment in Crane County, Texas, of date July 10, 1936, styled Harry Rhodabarger vs. Mildred Rhodabarger, wherein the intervener, Mrs. Mildred Rhodabarger was decreed an interest in the judgment theretofore rendered in Ward County, Texas, in cause No. 4192, styled Harry Rhodabarger vs. Traders and General Insurance Company, prior to the settlement of the case

with Harry Rhodabarger, J. B. Cotten and Hill B. Hudson, in Dallas, Texas?"

Upon the jury's finding, the court rendered judgment adjudging that intervener was the owner of an interest in cause No. 4192 in the sum of $2,300, ordering the clerk to issue execution for said amount upon her application, and taxing costs against plaintiff in error.

This appeal is from said judgment.

## Opinion.

█ Plaintiff in error invoked the jurisdiction of the district court of Ward county in a suit involving a judgment in which defendant in error had a substantial interest. She intervened to protect her interest in the judgment. She sought affirmative relief against the district clerk of Ward county as well as against plaintiff in error. The court's jurisdiction was not ousted by the company's dismissal of its cause of action. The court did not err in its holding upon the question of venue.

█ The controlling question arises upon the assignments challenging the trial court's action in sustaining intervener's exceptions to the company's special plea of perjury and fraud upon the part of Harry Rhodabarger. The exceptions were sustained upon the theory that the allegations related to intrinsic fraud, that there were no allegations of extrinsic fraud, and, therefore, no allegations that would justify reopening and setting aside the original judgment. A copy of the petition in cause No. 4420 and the judgment are attached to the petition of the company and incorporated by reference into its answer. The answer therein filed by the company and the special findings of the jury were not attached to or incorporated in the pleading. In Griffith v. Tipps (Tex. Civ. App.) 69 S.W. (2d) 846, 848, it was held to be incumbent upon plaintiff to "fully plead, or in proper manner to exhibit, the proceedings had in the original cause," and a failure of plaintiff in this respect justified dismissal on general demurrer. However, do not predicate our judgment herein upon that ground. The company did not urge any cross-action praying for the cancellation of the judgment entered in No. 4420. It merely pleaded fraud and perjury upon the part of Harry Rhodabarger as defensive pleading, and pleaded also that it compromised said judgment with the said Harry Rhodabarger. Clearly the stricken plea was not an answer that could be urged against intervener when she sought to have her rights as the legal owner of a part of said judgment recognized and confirmed. She had always had an equitable title to an undivided one-half. Rhodabarger's right to represent her ceased with the grant of the divorce decree.

But had the company sought affirmative relief of the character that it sought in its initial suit against Rhodabarger, its allegations were not sufficient. The fraud it alleged was intrinsic fraud. The petition charged perjury on the part of Rhodabarger in his testimony as to the extent of his injuries. That question was in issue when the case was tried. It cannot now be relitigated unless it appears that he was guilty of fraud of such character as prevented the company from interposing its defense. While the petition charged that he feigned injuries that did not exist and testified falsely, it nowhere alleged that the company or its representatives were deceived by the feigning or perjury. While it alleged that its doctors were mistaken in their diagnosis by reason of said feigning and by reason of a falsely stated history of the case (neither the alleged false statements or the diagnosis being stated), it is not alleged that they believed his statements or that they believed that he was injured to the extent he claimed, or that any conduct of his influenced their testimony upon the trial of the case. As said by the Austin Court of Civil Appeals in State v. Wright, 56 S.W. (2d) 950, 952:

"But the fraud which will authorize vacation by the court of its former judgment in such case must be what has been termed "extrinsic fraud." By that is meant fraud by the other party to the suit which has prevented the losing party either from knowing about his rights or defenses, or from having a fair opportunity of presenting them upon the trial. Such, for instance, as where he has been misled by his adversary by fraud or deception, did not know of the suit, or was betrayed by his attorney. In other words, fraud which denied him the opportunity to fully litigate upon the trial all the rights or defenses he was entitled to assert. "Intrinsic fraud" in the procurement of a judgment is not ground, however, for vacating such judgment in an independent suit brought for that purpose. And within that term is included such matters as fraudulent instruments, perjured testimony, or any matter which was actually presented to and considered by the trial court in rendering the judgment assailed.

* * * This rule was definitely laid down by the United States Supreme Court in U.S. v. Throckmorton, 98 U.S. [61] 65, 25 L.Ed. 93, affirmed in Hilton v. Guyot, 159 U.S. 113, 16 S.Ct. 139, 40 L.Ed. 95, stated in 15 R.C.L., 770, 34 C.J. 280, Freeman on Judgments, § 489, and followed by the courts of this state in McMurray v. McMurray, 67 Tex. 665, 4 S.W. 357; Warne v. Jackson (Tex.Civ.App.) 273 S.W. 315; Houston, E. & W. T. Ry. Co. v. Chambers (Tex.Civ. App.) 284 S.W. 1063; Reed v. Bryant (Tex. Civ.App.) 291 S.W. 605. The last-cited case contains an extensive discussion of this question and a review of the authorities. While there may be some expressions in the McMurray Case which might be construed as a limitation upon the rule in cases of perjured testimony, a careful analysis of that case shows that it is in harmony with the general rule; and the sufficiency of the petition to vacate therein was based upon the conclusion that the alleged fraud of the husband upon the wife was such, in conjunction with his perjured testimony, as to prevent her from presenting upon the trial her legal right in the premises."

In Reed v. Bryant (Tex.Civ.App.) 291 S.W. 605, there will be found a thorough and instructive analysis of the leading Texas cases treating of the subject of extrinsic fraud. Such fraud "must be extrinsic and collateral to the matter tried, and not a matter which was actually or potentially in issue in the action, unless the interposition of such defense was prevented by fraud, accident, or the act of the opposite party without fault or blame on his part." Ferguson v. Ferguson (Tex.Civ.App.) 98 S.W.(2d) 847, 850, citing 34 C.J. 278, § 496, and Reed v. Bryant, supra.

The case of McMurray v. McMurray, 67 Tex. 665, 4 S.W. 357, relied upon by plaintiff in error, is analyzed in Reed v. Bryant, supra, and quoted from liberally, and the statement made that the same construction of the McMurray Case was adopted in Warne v. Jackson (Tex.Civ.App.) 273 S.W. 317; Houston, E. & W. T. Ry. Co. v. Chambers (Tex.Civ.App.) 284 S.W. 1063.

In Hayward v. Hayward (Tex.Civ.App.) 53 S.W.(2d) 108, decided by this court, allegations of the petition were to the effect, not only that the original plaintiff had committed perjury, but that he had so managed his case that his wife did not have an opportunity to defend. The matter had not been litigated by the wife, because she did not know that the suit had been brought.

The appellant did not rely solely upon the perjury, and it is significant, perhaps, that the Supreme Court dismissed the application for writ of error instead of refusing the writ.

In Texas & P. R. Co. v. Duff (Tex.Civ. App.) 207 S.W. 580, the facts were somewhat similar to those alleged in the instant case, it being alleged that the original plaintiff by false testimony made his injuries appear much more serious than they were actually, thereby recovering a larger judgment than he would have secured had he told the truth. The matter was presented by bill of review which was dismissed by the trial court, and judgment was affirmed by the Dallas Court of Civil Appeals, which followed Greene v. Greene, 2 Gray (Mass.) 361, 61 Am.Dec. 454.

Again, in Houston, E. & W. T. Ry. Co. v. Chambers (Tex.Civ.App.) 284 S.W. 1063, upon allegations in many respects similar to those of plaintiff in error, in which it was alleged that the plaintiff committed perjury in describing his injuries, it was held that the question was a contested issue in the trial, and the railroad did not allege it was misled or prevented from making a full defense. The court refused to reopen the case.

A careful analysis of the company's pleading in this case reveals that the nearest approach to extrinsic fraud, as defined in the Texas cases, is the allegation that Rhodabarger secreted himself, and that when he left various places to go to other places, he left no address; that he refused to have his deposition taken, though it nowhere is alleged that interrogatories were filed or prepared or that he was approached on the subject, and subsequent allegations in the bill are to the effect that he was in other oil fields at various times working or attempting to secure work. To state it tersely, the alleged extrinsic fraud is a failure upon the part of Rhodabarger to aid plaintiff in error. We think the court correctly sustained the exceptions to this portion of the answer.

It follows from what has been said that there was no error in denying the motion for a continuance which was based upon the absence of witnesses who, it was alleged, would have refuted the testimony of Rhodabarger.

There was but one issue left in the case, and that was as to whether or not plaintiff in error, at the time of the compromise, knew of the divorce of intervener

from Harry Rhodabarger. If its representatives were aware of this proceeding and its result, they knew that they could not compromise with Rhodabarger so as to preclude her from collecting at least her one-half of the judgment. When they were informed of the judgment entered in Crane county, they were put upon inquiry as to its contents. Diligent inquiry would have revealed the full extent of intervener's interest.

For the reasons stated, all assignments of error are overruled and the judgment of the trial court affirmed.

HIGGINS, J., did not sit in this case or participate in the decision thereof.

## On Motion for Rehearing.

NEALON, Chief Justice.

In its motion for rehearing counsel for plaintiff in 'error insist earnestly that this case should be reversed upon the authority of Chicago, Rock Island Railroad Co. v. Callicotte (C.C.A.) 267 F. 799, 16 A.L.R. 386. There are substantial differences between the cases. Not only did the pleadings and evidence in the Callicotte Case show a course of practiced, deliberate deception in the way of simulating paralysis, a condition that might be temporarily superinduced by the use of drugs, but also it was testified that Callicotte threatened his wife's relatives in the event they disclosed his real condition, thus effectively and definitely shutting off a disclosure of truth essential to the defendant, and intimidating those who might have become its witnesses.

In this class of cases it is held that the courts may take notice of the facts shown upon former trials of the case and likewise of the records of the case. In fact, our courts have gone so far as to hold that the court may take notice of the facts shown by the records in another case between the same parties. Allen v. Thomson (Tex.Civ.App.) 156 S. W. 304; Edgar v. McDonald (Tex.Civ. App.) 106 S.W. 1135. By the weight of authority in this state those allegations contrary to the facts shown in the record of the case are not admitted by a demurrer, since the trial judge has authority to take cognizance of the records of his own court. Hobbs v. Boyd (Tex.Civ.App.) 292 S.W. 947, citing Edgar v. McDonald, su-

pra, and Farrar v. Bates, 55 Tex. 193. See, also, Bickle v. City of Panhandle (Tex.Civ. App.) 43 S.W.(2d) 640, 641; Cochran County v. Boyd (Tex.Civ.App.) 26 S.W. (2d) 364; Hake v. Dilworth (Tex.Civ. App.) 54 S.W.(2d) 583; Aetna Ins. Co. v. Dancer (Tex.Com.App.) 215 S.W. 962, 963.

By reference to the former appeal, we find that in its answer the defendant alleged that any injuries received were trivial and had long since healed, and that plaintiff was not incapacitated for labor on account of said injuries. We find, too, that issue submitting partial incapacity were submitted to the jury; that an issue was submitted as to whether the injury was confined to the right leg, and, if so, whether it would continue from August 14, 1933; and whether it was confined to the right leg below the knee. These disclose no reliance upon Rhodabarger's representations.

Turning to the statement of facts, we find that Drs. Jim Camp and J. Hillard Camp, witnesses in behalf of plaintiff in error, testified that they found no injuries except in proximity to the ankle. They based their evidence as to that injury entirely upon an X-ray picture that one of them had made, and from the knowledge thus acquired expressed the opinion that it was a permanent injury, but would not totally incapacitate the plaintiff—one fixing his incapacity at about 25 per cent. and the other at not exceeding 35 per cent. It does not appear that any of this evidence was based upon subjective symptoms, or upon any history of the case recited to these gentlemen by plaintiff. It also appears that at the trial, which took place in February, 1935, and from which the appeal. was taken, questions were asked by counsel on both sides of opposing witnesses as to the testimony of said witnesses at a "former trial," thereby indicating that the trial in February, 1935, was not the first trial of the case. Nowhere in the stricken pleading of plaintiff in error is there anything to account for defendant's failure to ascertain by cross-examination at the first trial at just what places plaintiff had been during the interval between said trial and the day of his injury, for whom he had worked during said time, how much work he had done, and with whom he had associated. Nor is there any sufficient allegation of diligence in following up the results of such in-

quiries, if any were made. The grant of a new trial would merely afford an opportunity to relitigate issues decided by the jury after hearing conflicting testimony.

The motion for rehearing is overruled.