Jasper W. GRIFFIN et al., Appellants,

v.

Geraldine Courtney GRIFFIN, Appellee.

No. 3476.

Court of Civil Appeals of Texas.

Waco.

Sept. 19, 1957.

Rehearing Denied Oct. 24, 1957.

W. T. Bennett, Huntsville, Mac L. Bennett, Jr., Normangee,.for appellants.

Hill & Lowry, D. Mervin Key, Houston, for appellee.

McDONALD, Chief Justice.

This is a bill of review brought 49 days after a judgment decreeing Frank O. Griffin a divorce from Geraldine C. Griffin. Such divorce was decreed on *28 March 1955.* Frank O. Griffin was killed on *3 April 1955.* Geraldine C. Griffin as plaintiff, filed this suit on *16 May 1955,* against the father, mother, brothers, sisters, and executrix of the estate of Frank O. Griffin, as defendants, to set the divorce decree aside. Plaintiff alleged that Frank O. Griffin died without a will, and left property in which she has an interest if the divorce decree be set aside; that after the divorce suit was filed she and deceased reconciled their differences, commenced to live together; and that for such reason the grounds for such divorce were condoned and the decree is void or voidable.

The record reflects that plaintiff was twice married before she married Griffin; that she and Griffin were married in 1947; that they were divorced in 1948 and remarried in 1949; that in *July 1954* Griffin filed petition for divorce from plaintiff in Leon County; that plaintiff signed a waiver in such divorce action in *August 1954;* that plaintiff testified, over objection that such testimony was in violation of Article 3716, R.C.S. (the Dead Man's Statute), that she and deceased had reconciled their differences after the divorce was filed and lived together as husband and wife; that in March 1955 plaintiff again left Griffin and went to Houston; that on *28 March 1955* Griffin secured a divorce from plaintiff in the case originally filed in 1954; that on *31 March 1955* plaintiff wrote to Griffin's lawyer the following letter:

"Dear Sir:
"Frank was intending to see you about the divorce. I would like to know if he signed the paper or not. Will you please let me know at once. And if the divorce is granted, please send me a copy. I will send you whatever the cost.
"Frank should give you a fifth of Scotch, for letting the waiver stand for the last seven or eight months.
"Thank you and let me know at once, please.
"Sincerely,
"Jerry Griffin."

On 3 April 1955 Frank O. Griffin was killed. Members of deceased's family notified plaintiff and she came to the funeral, which was held on *4 April 1955.* Deceased's sister told plaintiff while she was in Leon County for the funeral that deceased had gotten a divorce from her on 28 March.

On *5 April 1955* plaintiff received a reply to her letter to deceased's lawyers, advising her that the divorce had been granted on *28 March,* as well as a copy of the divorce decree. On *5 May 1955* plaintiff consulted her present attorneys, and on *16 May 1955* the case at bar was filed to set aside the divorce decree.

Trial was to a jury, which, in answer to special issues, found:

1) Frank O. Griffin and plaintiff lived together after the divorce suit was filed and prior to the time same was granted.

2) Frank O. Griffin did not testify in the 28 March 1955 divorce suit that he and plaintiff had not lived together as husband and wife since the filing of the suit.

3) Plaintiff used diligence in seeking to set aside the divorce judgment of 28 March 1955.

4) Plaintiff did not fail to exercise ordinary care in not filing the suit to set aside the divorce judgment prior to *16 May 1955.*

5) Plaintiff was not delivered a copy of the divorce decree in time to have 10 days after 28 March 1955 to file her petition to set aside such decree.

6) Plaintiff was not delivered a copy of the divorce decree in time to have, within 30 days after *28 March 1955,* acting as a person of ordinary prudence in the exercise of ordinary care, appealed such judgment.

7) Plaintiff was not guilty of negligence in failing to appear and defend the divorce case which terminated in the *28 March 1955* divorce decree.

The Trial Court disregarded Issue No. 2, and based on the remaining findings, entered judgment for plaintiff vacating and setting aside the divorce decree between plaintiff and Frank O. Griffin.

Defendants appeal, seeking a reversal, contending:

1) Plaintiff plead the marriage with Frank O. Griffin to have been consummated in 1947; the evidence shows such marriage was terminated by divorce in 1948 and no further marriage was plead.

2 and 3) The Trial Court erred in admitting, over objection of defendants, the plaintiff's testimony of numerous transactions with the deceased.

4) The Trial Court erred in admitting into evidence marriage licenses of plaintiff and Frank O. Griffin.

5) The Trial Court erred in disregarding the jury's answer to Issue No. 2.

6) Plaintiff did not as a matter of law exercise ordinary care and was guilty of negligence in failing to set aside the divorce decree.

7) Plaintiff as a matter of law did not exhaust her remedies at law in failing to attempt to set aside the divorce decree.

8) Plaintiff was married to one Malcolm McDonald at the time of her purported marriage to Frank O. Griffin and consequently not capable of entering into a valid marriage with Griffin.

9) Plaintiff as a matter of law failed to establish that the divorce decree was brought about by *extrinsic* fraud.

■ Defendants' 1st contention is that plaintiff plead that she married Griffin in 1947; that the evidence shows such marriage was terminated by divorce in 1948 and that no further marriage was plead. Plaintiff plead that she married Griffin in 1947 and that they continued to live together as husband and wife until May 1954. Defendants did not level special exceptions to plaintiff's petition nor did they raise the 1948 divorce and 1949 remarriage in their answer. We think the existence of a marriage between plaintiff and Frank Griffin was fairly alleged and that defendants have waived any complaint that they might have

otherwise had by failing to raise the point earlier by special exception.

 Defendants' 2nd and 3rd contentions are that the Trial Court erred in admitting into evidence, over the objection of defendants, plaintiff's testimony as to numerous transactions with the deceased. Article 3716, R.C.S., commonly known as the Dead Man's Statute, in actions by or against executors, heirs, etc. of a decedent, forbids testimony as to *any transaction* with the decedent. The rule as to whether a state of facts constitutes a transaction with a deceased person so as to violate Article 3716 is: If the witness offered should testify falsely, could the deceased, if living, controvert it by his own personal knowledge? Dakoff v. National Bank of Commerce, Tex. Civ.App., 254 S.W.2d 550, writ refused. The Trial Court permitted plaintiff, over objection, to testify as to when and where she married deceased; details of their life together; *and the fact that she lived with deceased as husband and wife, after filing of the 1954 divorce petition and before the divorce was granted in March 1955.* She further testified that as the result of another disagreement she left deceased again a few days before he obtained the divorce.

In the case at bar Griffin's attorney testified that Griffin had testified that he and plaintiff had not lived together after filing of the divorce petition; also defendants filed an admission to the effect that Griffin had so testified.

Since a bill of review directly attacking a divorce judgment is but a part of the divorce proceeding (Burguieres v. Farrell, 126 Tex. 209, 87 S.W.2d 463) and since it is in the record that Griffin testified that he and plaintiff had not lived together since the filing of the divorce petition, it would seem that plaintiff's testimony that she and Griffin *did* live together would come within the exception set up in O'Neill v. Brown, 61 Tex. 34. That case was a second trial between two parties. Brown testified on the first trial. On the second trial O'Neill testified contrary to Brown's testimony on the first trial and such testimony was excluded (under the Dead Man's Statute, since Brown was dead). Our Supreme Court said:

"That statute seems to proceed upon the idea that the dead man cannot be heard, and therefore the surviving litigant should not be permitted to testify to any transaction with, or statement made by, the deceased. But we do not think the reason for the rule would extend to a case like this. Brown was heard upon a former trial, and he obtained a judgment upon his own testimony; and we do not think that the statute should have been so construed upon the last trial as to exclude the testimony of O'Neill concerning the same transactions. Runnels v. Belden, 51 Tex. 48.

"* * * * * *

"Under the statute, the testimony was admissible on the first trial. And having been properly admitted, then no good reason appears for its exclusion upon the second trial, when O'Neill is present and is permitted to testify."

 In the case at bar, it is in evidence that Griffin testified he and plaintiff had not lived together since filing of the divorce petition. Since this proceeding is still a part of the divorce proceeding, and since the intention of the Dead Man's Statute is to place all parties on an equal footing, we think the statute does not preclude testimony by plaintiff that she and deceased did live together.

 But, should we be mistaken in the foregoing, since Mrs. Margie Griffin, one of the defendants herein and mother of Frank O. Griffin, testified that plaintiff and Frank lived and slept together in the same room in her home in Jewett, Texas, after the filing of the divorce petition and prior to the granting of same; and since the witnesses Mrs. Haynes and Alton Courtney both testified at length that plaintiff and deceased lived together during such period of time;

and since there was no testimony in the record that they did not live together during such period; the admission of plaintiff's testimony, if erroneous, would seem to us harmless error. We further believe that the condonation, and the jury's answer to Special Issue 1 that Griffin and plaintiff lived together after the divorce suit was filed and prior to the time same was granted was amply and legally established and supported by the record as a whole absent the plaintiff's testimony.

■ Defendants' 4th contention is that the Trial Court erred in admitting into evidence the marriage licenses of plaintiff and deceased. The matters involved were proved by other evidence and the evidence, if inadmissible, was harmless.

■ Defendants' 5th contention is that the Trial Court erred in disregarding the jury's answer to Issue 2. The jury answered that Griffin *did not* testify that he and plaintiff had not lived together since filing the divorce suit. Griffin's lawyer testified that Griffin testified that he and plaintiff had not lived together, and defendants filed an admission to such effect. There was no evidence that Griffin did not so testify. The Trial Court correctly disregarded the jury's answer to Issue 2.

■ Defendants' contention No. 8 is that plaintiff was married to another at the time of her purported marriage to Griffin, hence she was not capable of entering into a valid marriage with Griffin. This point is without merit. Defendants failed to plead or prove that plaintiff's prior marriage was not dissolved and the presumption of the validity of her marriage to Griffin prevails.

■ Defendants' 6th, 7th and 9th contentions are that plaintiff did not as a matter of law exercise ordinary care and was guilty of negligence in failing to set aside the divorce decree; that as a matter of law she did not exhaust her remedies at law in failing to attempt to set aside the divorce decree; that as a matter of law she

failed to establish that the divorce decree was brought about by extrinsic fraud. The jury found that plaintiff: 1) had a meritorious defense to the divorce; 2) used diligence to set the divorce aside; 3) was not negligent in filing suit to set the divorce aside prior to 16 May; 4 and 5) did not have a copy of the divorce decree in time to file her petition to set same aside within 10 days and 30 days after 28 March, acting as a person of ordinary prudence, in the exercise of ordinary care; 6) was guilty of no negligence in failing to appear and defend the divorce case on 28 March. There is evidence in the record to sustain each of the foregoing findings. Whether such answers are against the great weight and preponderance of the evidence is not before this court since defendants did not raise such point. Griffin obtained the divorce upon the false testimony that he and plaintiff had not lived together since the filing of the suit. Defendants contend that such false testimony constitutes "intrinsic fraud" only, which is not such fraud as will entitle plaintiff to set the judgment aside on bill of review. When deceased and plaintiff commenced to live together as husband and wife after the filing of the divorce suit by deceased, deceased thereby condoned grounds for the divorce; such condonation pardons and forgives the acts of the other spouse, and constitutes an implied promise to abandon suit. Therefore, when deceased obtained his divorce on 28 March he committed not only the "intrinsic fraud" of testifying falsely, but he committed "extrinsic fraud" in obtaining a hearing in the case without some notice to plaintiff and in obtaining the judgment without her knowledge, after he had condoned his grounds, forgiven plaintiff and by such impliedly promised to abandon his suit. Deceased's conduct in living with plaintiff and condoning the grounds for divorce—and then securing the divorce without notice to plaintiff, and upon false testimony—constitutes "extrinsic fraud" in depriving plaintiff of presenting her defenses. See: 157 A.L.R. 75; 22 A.L.R.2d 1332; McMurray v. McMurray, 67 Tex. 665, 4 S.W. 357, 358;

Traders & General Ins. Co. v. Rhodabarger, Tex.Civ.App., 109 S.W.2d 1119, 1123.

All of defendants' contentions have been very carefully considered and are overruled. The judgment of the Trial Court is accordingly Affirmed.