Luther FLEMING, Appellant,

v.

BAYLOR UNIVERSITY MEDICAL CENTER, Appellee.

No. 5676.

Court of Civil Appeals of Texas, Waco.

July 14, 1977.

Rehearing Denied Aug. 18, 1977.

J. Donald Bowen, Helm, Pletcher, Hogan & Burrow, Houston, James J. Hartnett, Dallas, for appellant.

Catherine A. Gerhauser and James H. Holmes, III, Burford, Ryburn & Ford, Dallas, for appellee.

HALL, Justice.

This is a common law negligence action. Luther Fleming was a patient in Baylor University Medical Center when oxygen supplied to his room for his treatment was caused to ignite and he was severely burned. He brought this action against the Medical Center for his damages. While the cause was awaiting trial Mr. Fleming died and his widow, Mrs. Rita H. Fleming, who is his sole heir and the community survivor, was substituted as plaintiff. The case proceeded to trial before a jury. At the close of plaintiff's proof defendant Medical Center moved for an instructed verdict asserting there was no evidence that its negligence proximately caused the fire. The motion was granted and judgment was rendered that plaintiff take nothing. She appeals. We remand the case for trial.

The rules we must follow in deciding the propriety of the instructed verdict are well-established. If there is evidence in the record which would support findings that defendant failed to exercise ordinary care on the occasion in question and that this failure was a proximate cause of the accident which produced Mr. Fleming's injuries, then the instructed verdict should not have been granted. Conversely, if there is no evidence that defendant acted negligently or no evidence that its negligence was a proximate cause of the accident, then the instructed verdict was proper. In testing these no evidence questions, we must consider only the evidence and inferences which tend to show negligent causation by defendant, and reject the rest.

Mr. Fleming was admitted to defendant Medical Center on October 21, 1973. The accident upon which this suit is based occurred five days later. Mr. Fleming was 68 years of age, obese, and suffering with pneumonia superimposed upon other illnesses when admitted. He was in a confused state upon admission, and there is direct evidence that he was still confused two days before the accident. He immediately established himself as a very uncooperative patient and remained so throughout the time in question. Because of prior surgery on his hips and his overall physical condition he was bedfast, and side rails were used to prevent his falling from the bed. He could sit in a chair, but it was necessary that he be helped to and from his bed to the chair. A part of his prescribed treatment was the continuous administration of oxygen through a face mask while he was in bed. The oxygen could be turned on and off only by hospital personnel. Mr. Fleming was a compulsive smoker of cigarettes. This and the use of oxygen posed a grave danger of fire and a continuous problem for the hospital personnel. All who worked with him (this included supervisors, registered nurses, practical nurses, nurses' aides, and therapists) were constantly removing matches and cigarettes from his person and his room, and warning him of the great danger created by cigarette smoking in his room. They testified to his completely uncooperative, hostile attitude toward them when they removed his cigarettes and matches and continually warned him of the danger of smoking with continuous oxygen in use.

They warned him that smoking "would set him on fire." His response was, "I'm going to do it anyway." This attitude prompted the staff to leave the door of his room open at all times so he could be watched. A "No Smoking" sign was posted on the door. When the door was open, the sign was visible to Mr. Fleming as he lay in bed. No one seemed certain how he got the cigarettes and matches. They were not supplied by plaintiff or her sister who were Mr. Fleming's only visitors. He would call to people passing in the hallway and ask them to get him cigarettes. Once, an aide saw a man carry cigarettes into the room. It was known that hospital orderlies sometimes helped patients obtain personal needs. The hospital personnel regularly found matches and cigarettes on and in the drawer of a bedside table. Knowing that Mr. Fleming could not walk, they would sometimes simply remove the matches and cigarettes across the room to another table. At other times the prohibited articles were removed to the nurses' station. One nurse testified that the problem was so bad that "the whole medication room [at the nurses' station] was full of cigarettes. I mean, it looked like a smoke place, I mean, where you buy pipes, and it was full of packages and cigarettes and so forth that belonged to him." Linda Del White, a nurse who was not assigned to Mr. Fleming's area of the hospital, responded to a call for help from him on the day before the fire. She found him sitting in the chair "digging" in the bedside drawer. He finally secured a pack of cigarettes and matches from the drawer, but he was unable to light a cigarette, and needed someone to light it for him. She could see the oxygen equipment, warned him about smoking, and with the help of an aide took the cigarettes and matches from him and placed them in a table drawer across the room. Teresa Aguilar was the nurse in charge of Fleming's ward during the 7:00 A.M. to 3:00 P.M. work shift. When she was giving Mr. Fleming some medication on the morning of October 25th, the bedside table drawer was slightly open and she saw two packs of matches and a pack of cigarettes in it. She removed them

to the nurses' station. Then, on October 26th, soon after lunch, Mr. Fleming told Mrs. Aguilar he wanted a cigarette. He was sitting in the chair and the oxygen was off. She brought him a cigarette and a package of matches from the nurses' station, lit the cigarette for him, gave it to him, and walked out. Soon Mr. Fleming called the nurses' station and Mrs. Aguilar returned to his room. He told her he was short of breath and wanted to nap. She testified that she took the cigarette from him, put it out in an ash tray on the over-bed table, put him to bed, turned the covers, raised the side rails, turned the oxygen on, put the mask on him, turned the lights off, walked out, and closed the door. She did not check the bedside table drawer before she left the room. In fact, she did not check the drawer at any time that day. A "very short time" after she left, the oxygen was ignited, Mr. Fleming's bed and clothing caught fire, and he was severely burned. No one entered Mr. Fleming's room during this short time span. The hospital administrator testified that immediately after the fire he found "a package of cigarettes on the floor with one cigarette left in it" and "also a package in the bedside cabinet."

Neither plaintiff nor her sister knew that Mr. Fleming was smoking in the hospital. Plaintiff visited him twice daily, but she was never told about the constant problem posed by his securing cigarettes and matches, and his determination to smoke. If she had known, she could have hired around-the-clock nurse care for him as she did after he was burned. When she first learned after the fire that defendant claimed her husband was smoking in bed, she demanded to know why she hadn't been told of the problem. Defendant's nurse supervisor responded, "well, we're like everything else, short of help here and just many things are not done."

The evidence we have recited raises three grounds of negligence against defendant. First, if Mr. Fleming was attempting to light a cigarette at the time of the fire, then it and the match (and the cigarette found on the floor after the fire) came from

the bedside table drawer. These and the pack of cigarettes found in the drawer immediately after the fire would have been found by nurse Aguilar if she had checked the drawer before she left the room just before the fire. She failed to do so. Second, if Mr. Fleming was not attempting to light a cigarette, and if no one entered his room between nurse Aguilar's departure and the fire, then the ignition could have been caused only by Mrs. Aguilar's failure to completely extinguish the cigarette she took from Mr. Fleming before she helped him to bed. Finally, without excuse other than "many things are not done," defendant's personnel failed to alert Mrs. Fleming to Mr. Fleming's insistent smoking and the danger it created. Under the circumstances, the jury would have been entitled to believe that these failures, or any one of them, did not meet the standard of ordinary care.

The evidence we have set forth also shows that the fire in question was a foreseeable consequence that could and probably would result from the failure of defendant's employees to keep smoking materials from Mr. Fleming, and remove lighted cigarettes from his room, while oxygen was in use.

■ The instructed verdict should not have been granted.

There is another problem in the case. On the trial, certain testimony by plaintiff was excluded over plaintiff's protest on the ground that it violated article 3716, Vernon's Tex.Civ.St., the so-called "Dead Man's Statute." Plaintiff says that on retrial the question will arise again, and she asks us to resolve it now.

The excluded testimony related to Mr. Fleming's physical and mental condition immediately prior to his admission to the hospital, between the time of his admission and the time of the fire, and after he was burned. Primarily, it was designed to show that Mr. Fleming was in a confused state during the five days preceding the fire.

In its pertinent parts, article 3716 provides that in an action by or against the heirs or legal representatives of a decedent arising out of a transaction with the decedent neither party shall be allowed to testify against the other as to any transactions with the decedent "unless called to testify thereto by the opposite party."

■ When a party by pre-trial procedures (like oral depositions, requests for admissions, and written interrogatories) initiates an inquiry and requires testimony by the other party relative to a transaction with a decedent which is covered by article 3716, the statute is waived by the inquiring party and on the trial the other party may testify fully regarding such transaction. *Chandler v. Welborn*, 156 Tex. 312, 294 S.W.2d 801, 809 (1956); *Burris v. Levy*, 302 S.W.2d 171, 174 (Tex.Civ.App.—San Antonio 1957, writ ref'd n. r. e.); *Denbo v. Butler*, 523 S.W.2d 458, 460 (Tex.Civ.App.—Houston [1st Dist.] 1975, no writ hist.).

■ Prior to trial, defendant propounded written interrogatories to Mrs. Fleming directly related to Mr. Fleming's mental and physical condition during his five-day stay in the hospital just preceding the fire, and his physical condition after the fire. Defendant thereby waived objections based upon article 3716 to plaintiff's testimony about those facts.

The judgment is reversed.

This case is remanded for trial.