**Mrs. J. B. FOSTER and Ben Roshton as Independent Executor, Appellants,**

v.

**Wayne LEWIS, Appellee.**

**No. 6971.**

Court of Civil Appeals of Texas, El Paso.

Oct. 8, 1980.

Rehearing Denied Nov. 19, 1980.

Ted Painter, Pecos, Scott, Hulse, Marshall, Feuille, Finger & Thurmond, L. Randall Lee, El Paso, for appellants.

C. R. Kit Bramblett, El Paso, for appellee.

OPINION

OSBORN, Justice.

Wayne Lewis sued Mrs. J. B. Foster for damages alleged to have been incurred as a result of a breach of an oral agreement to furnish water required by Lewis for cattle which he had pastured on land adjoining Mrs. Foster's ranch. Based upon a jury verdict, judgment was entered for the Appellee. We reverse and remand.

Prior to her death, Mrs. J. B. Foster owned a large ranch in Culberson County, Texas. Wayne Lewis worked for her and operated the ranch for several years until

he went into the cattle business for himself. During the time he worked for Mrs. Foster, he was allowed to have some of his own cattle pastured on the Foster ranch. In April, 1975, Mr. Lewis entered into a written grazing lease with Van Williamson for nine sections of land adjoining the Foster ranch. At the same time, he made an oral agreement with Mrs. Foster to furnish water for his cattle since there was no water supply on the pasture he had leased. In July, 1976, he moved his cattle to the leased pasture. On December 29, 1976, Mrs. Foster's attorney wrote to Mr. Lewis advising that she would require all the water her land could produce for her own ranching purposes, and that she could no longer provide free water to his leased land after March 1, 1977. After receiving that letter, Mr. Lewis sold his cattle and did not use the leased pasture for the remainder of the lease. After failing to obtain injunctive relief to prevent the water being turned off, he filed this suit to recover damages. Mrs. Foster died in August, 1978, and her executor was substituted as a party.

Upon the trial of the case, objection was made to the introduction of any testimony from Mr. Lewis concerning his agreement with Mrs. Foster because of the provisions of Article 3716, Tex.Rev.Civ.Stat.Ann., commonly known as the Dead Man's Statute. That Act provides:

> In actions by or against executors, administrators, or guardians, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the others as to any transaction with, or statement by, the testator, intestate or ward, unless called to testify thereto by the opposite party; and the provisions of this article shall extend to and include all actions by or against the heirs or legal representatives of a decedent arising out of any transaction with such decedent.

In this case, the suit at the time of trial was against the executor of Mrs. Foster's estate, and the judgment which was entered was against "Ben Roshton Independent Executor for the Estate of Mrs. J. B. Foster."

The Appellants' objection was overruled, and the fourth point of error complains of the Court's ruling which permitted Mr. Lewis to testify as to transactions with the decedent, Mrs. Foster. In the trial of this case, counsel for Mr. Lewis initially read into the record the testimony of Mrs. Foster which had been given prior to her death. That testimony was to the effect that she agreed to furnish water to Mr. Lewis as long as she did not need it herself. She said there was no set time limit. Her testimony also reflected that in November, 1976, she sold a ranch in New Mexico and moved about three hundred and fifty to four hundred cows, calves and bulls to her ranch in Culberson County. Shortly after that transaction, she had her attorney write Mr. Lewis that she would not be able to furnish him water after March 1, 1977.

Mr. Lewis then testified that he had an agreement with Mrs. Foster for her to furnish him water for a period of three years, the same period of time as his pasture lease. Mr. Lewis also offered testimony that Mrs. Foster threatened to cut off his water because she thought he had reported to the Immigration Service that she had an illegal Mexican farmhand working on her ranch. The jury believed Mr. Lewis and found there was an agreement to furnish water for three years.

Quite clearly, the testimony of Mr. Lewis was received in evidence in violation of Article 3716, Tex.Rev.Civ.Stat.Ann., unless there was a waiver. The statute does provide for a waiver where the party to the transaction with the deceased is "called to testify thereto by the opposite party." This may be accomplished by taking a deposition and inquiring as to the transaction with the deceased. *Chandler v. Welborn*, 156 Tex. 312, 294 S.W.2d 801 (1956); Ray, 1 Texas Law of Evidence sec. 334 (1980). A waiver may also occur when the testimony of the decedent is offered by the one entitled to the protection of the statute. Thus, had counsel for the executor offered the testimony of Mrs. Foster, certainly Mr. Lewis would be qualified to testify. *O'Neill v.*

*Brown*, 61 Tex. 34 (1884); Ray, 1 Texas Law of Evidence sec. 335 (1980).

■ In this case, neither of those exceptions exist. Instead, Mr. Lewis offered the testimony of Mrs. Foster, and then he testified concerning the same transaction about which her testimony had been offered and quite contrary to her testimony. A similar situation occurred in *Ivey v. Bondies*, 44 S.W. 916 (Tex.Civ.App.1897, writ ref'd). In that case, the defendant urged that the trial court erred in not permitting him to testify concerning a parol sale of land by the deceased, Bondies, whose deposition was on file and which Ivey proposed to introduce in connection with his own testimony on the same subject matter. After noting that the deposition had not been introduced by the plaintiff, the Court said:

> In *Runnels v. Belden*, 51 Tex. 50, it was held, where the executor had read the depositions of his testator in evidence, that the opposite party might properly be allowed to testify in his own behalf upon the matters referred to in the depositions. Moore, C. J., in delivering the opinion of the court, said: 'In such case, if the executor insists on putting the deposition of his testator in evidence, it does not violate but accords with the reason and spirit of the law and its proper construction, to permit the other party to the suit to also give his version of the matters between himself and the deceased referred to in such deposition; and this seems to be the interpretation given elsewhere to similar statutes.' In *Simpson v. Brotherton*, 62 Tex. 171, referring to the *Runnels* Case, above, Willie, C. J., said: 'In the case of *Runnels v. Belden*, 51 Tex. 48, it is held that when a party to a suit had testified by depositions, and died, and his executor had been made party in his place, it was error to exclude the testimony of the other party on the trial touching the acts and declarations of the deceased, about which the deceased had testified in his depositions. The strict letter of the statute prohibited the testimony; but as the dead plaintiff had been allowed to speak in evidence, as it were

from the grave, the court said the living defendant should also be allowed to testify. This was an interpretation of the statute according to its spirit and intention, and not according to its letter, and, giving such a construction in the present instance, we think the court erred in not excluding the testimony of the wife.' It will be seen from these cases that the principle upon which the evidence was held admissible was that the depositions of the deceased had been put in evidence by his representative, and that it would contravene the spirit of fairness and justice to close the mouth of the opposite party, under such circumstances. In the case at bar, the executors had not introduced the depositions of their testator upon this trial, but the defendant offered to introduce them in connection with his own testimony, if he were permitted to testify in the case. In other words, he offered them only as a predicate for his own testimony. We think such a practice would be contrary to both the letter and the spirit of our statute.

A similar result was reached in *Tepper v. Tannenbaum*, 87 Misc.2d 829, 386 N.Y.S.2d 936 (Sup.Ct.1976), where the Court noted that to permit the disqualified person the right to offer the testimony of the decedent and then offer their own testimony would be a bootstrap operation not permitted by the statute. To the same effect is the holding in *Smith v. Burroughs*, 34 S.W.2d 364 (Tex.Civ.App.–Austin 1930, writ dism'd). Contra,: *Shaller v. Allen*, 278 S.W. 873 (Tex.Civ.App.–Amarillo 1925, no writ).

We believe this is a just result under the statute. Although much has been written concerning inequities arising from the Dead Man's Statute, so long as it remains the law of the land we do not believe the disqualified survivor should be able to affect a waiver by introducing the testimony of the deceased so as to then be able to testify to the transaction with the deceased. At that stage of the trial, the deceased's lips are sealed. There is no possibility of rebuttal from the deceased party. There is no chance for the jury to see and evaluate the

testimony of a live witness whose appearance might be more impressive than that of the survivor to the transaction. We feel compelled to follow the holding in the *Ivey* case.

■ The Appellee also asserts that there has been a waiver of the Dead Man's Statute because of requests for admissions and interrogatories submitted by Mrs. Foster to Mr. Lewis in February, 1978. Such contention finds support in the language used by the Court in *Fleming v. Baylor University Medical Center*, 554 S.W.2d 263 (Tex.Civ. App.–Waco 1977, no writ), where the Court said:

> When a party by pre–trial procedures (like oral depositions, requests for admissions, and written interrogatories) initiates an inquiry and requires testimony by the other party relative to a transaction with a decedent which is covered by article 3716, the statute is waived by the inquiring party and on the trial the other party may testify fully regarding such transaction. *Chandler v. Welborn*, 156 Tex. 312, 294 S.W.2d 801, 809 (1956); *Burris v. Levy*, 302 S.W.2d 171, 174 (Tex. Civ.App.–San Antonio 1957, writ ref'd n. r. e.); *Denbo v. Butler*, 523 S.W.2d 458, 460 (Tex.Civ.App.–Houston [1st Dist.] 1975, no writ hist.).

But, on application for writ of error, the Texas Supreme Court in a per curiam opinion, 561 S.W.2d 797 (Tex.1977), said:

> The Court of Civil Appeals also held that the Medical Center's interrogatories to Mrs. Fleming waived application of the Dead Man's Statute, Tex.Rev.Civ.Stat. Ann. art. 3716. The action of this Court should not be understood as approving the portion of the opinion pertaining to waiver of that Statute. Application for writ of error is refused, no reversible error.

Thus, we conclude that a waiver does not exist; otherwise, there would have been no need for the per curiam opinion. Even if it might exist in some cases, there is reason to say there can be no waiver in this case because, at the time the request for admissions and interrogatories were sent out and answers made, Mrs. Foster was still alive. At that time, the executor was not a party and the Dead Man's Statute had no application to the case. Thus, the question arises as to how can there be a waiver of a right that does not exist? If a court is to say that an executor waived a valuable right, should it not first be required that the executor be a party to the suit and participate in the conduct which resulted in the waiver? Regardless of the answer to this question, we must conclude under the *Fleming* decision that there has been no waiver in this case. Appellant's Point of Error No. 4 is sustained.

There is no competent evidence to support the jury's answer to special issue No. 1. But, the Appellant has not laid the proper foundation for a reversal and rendition under the fourth point of error. See: *J. Weingarten, Inc. v. Razey*, 426 S.W.2d 538 (Tex.1968); *Rosas v. Shafer*, 415 S.W.2d 889 (Tex.1967); Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Texas L.Rev. 361 at 362 (1960).

We have considered the Appellant's other points of error; the first three points are overruled and the last point has become moot.

The judgment of the trial Court is reversed and the case is remanded to the trial Court.