**Wayne LEWIS, Petitioner,**

v.

**Mrs. J. B. FOSTER and Ben Roshton as Independent Executor, Respondents.**

**No. C–12.**

Supreme Court of Texas.

Sept. 16, 1981.

C. R. Kit Bramblett, El Paso, Davis, Durham & Canon, M. Michael Park, Huntsville, for petitioner.

Ted Painter, Pecos, for respondents.

SPEARS, Justice.

This suit was brought by Petitioner Wayne Lewis to recover damages resulting from the breach of Mrs. Foster's oral agreement to furnish water for cattle which Lewis pastured on leased land adjoining decedent's ranch. The principal issue is whether Lewis's testimony concerning the alleged agreement was admissible in the face of the Dead Man's Statute, article 3716.[1]

The trial court admitted Lewis's testimony over objection in a jury trial, and based on a jury verdict favorable to Lewis, rendered judgment for Lewis against Ben Roshton, Independent Executor of the Estate of Mrs. J. B. Foster, for $31,041.40 plus attorneys' fees. The court of civil appeals reversed the judgment of the trial court and remanded the case to the trial court, holding that Lewis's testimony was inadmissible. 607 S.W.2d 608. We reverse the judgment of the court of civil appeals and affirm the judgment of the trial court.

Prior to her death, Mrs. Foster owned a large ranch in Culberson County. Wayne Lewis was employed by her to run the ranch which he did for several years until July 1976. In April 1975, while still in Mrs. Foster's employ, Lewis entered into a written three-year lease for nine sections of land adjoining the Foster ranch that belonged to her nephew, Van Williamson. The lease was negotiated between Lewis and Mrs. Foster, whose authority to act for Van Williamson is not disputed. Lewis testified that concomitantly with the lease, he and Mrs. Foster orally agreed that he would receive water for the stock on the lease from Mrs. Foster's well on an adjoining tract during the three-year lease period if he complied with certain requirements.

First, he was to repair the pipeline from the well to the Van Williamson tract. Second, he was to move his cattle to the leased property from Mrs. Foster's land, where he was allowed to keep them as a part of his compensation from his job as foreman. In late December 1976, after Lewis had left his job on the Foster ranch, Mrs. Foster notified Lewis through her attorney that effective March 1, 1977 she would "require all the water the land can produce for her own ranching purposes and will no longer provide free water to the land you have leased." One of Lewis's witnesses testified that Mrs. Foster told him she was going to cut off Lewis's water if Ramon, a ranch hand of Mrs. Foster's, was picked up by the U. S. Border Patrol one more time. Well, he was, and she did! Mrs. Foster, however, denied the threat, and Lewis denied reporting Ramon.

After receiving the notice from Mrs. Foster's lawyer, Lewis filed suit to enjoin the threatened water cut-off. At a hearing on the injunction on May 20, 1977, Mrs. Foster testified at length concerning the negotiations for the lease, the absence of any oral agreement about water, her employee Ramon, the water available on the ranch in the different pastures and the reason she needed all the water for her own ranching purposes. She testified that in late summer of 1976 she sold her New Mexico ranch and moved all the cattle, about 400 head, to her ranch in Culberson County. Placing the additional cattle on her ranch required that she would need all the water available even though there had been no shortage of water before. In her testimony, she discussed the negotiations with Lewis for the lease, claimed she had authority to act for her nephew, and denied emphatically any agreement to furnish water to Lewis beyond the time when she would need it her-

---

1. Tex.Rev.Civ.Stat.Ann. art. 3716 (Vernon 1926) reads:

   In actions by or against executors, administrators, or guardians, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the others as to any transaction with, or statement by, the testator, intestate or ward, unless called to testify by the opposite party; and the provisions of this article shall extend to and include all actions by or against the heirs or legal representatives of a decedent arising out of any transaction with such decedent.

   All statutory references are to Vernon's Revised Texas Civil Statutes Annotated.

self. Since Mrs. Foster was known to be seriously ill at the time of the hearing, the attorneys for both Lewis and Mrs. Foster entered into a written stipulation in the trial court, approved by the trial judge, that Mrs. Foster's testimony in the hearing "can and will be used in future proceedings in lieu of her deposition." After the hearing the court denied the injunction sought by Lewis.

Mrs. Foster died in August of 1978, and her executor was substituted as a party. At the September 4, 1979 trial on the merits for damages Lewis introduced most of his cross-examination of Mrs. Foster at the prior hearing without objection by the executor. Then the executor offered other portions of the cross-examination and all of his direct examination of Mrs. Foster. Then Lewis's attorney called Lewis to the stand to testify concerning the same transactions covered by Mrs. Foster's prior testimony. The executor objected to any testimony by Lewis about transactions or conversations with the then deceased Mrs. Foster on the grounds that it would violate the Dead Man's Statute. The trial court overruled the objection and permitted Lewis to testify about the transactions to which Mrs. Foster previously testified, and Lewis was fully cross-examined. The question before us is whether allowing Lewis to testify was error.

At common law, parties to a lawsuit and persons pecuniarily interested in the outcome of the suit were disqualified from testifying regardless of the ability or the availability of the opposing party to tell his side of the story. See Ray, Texas Law of Evidence sec. 321–2 (Texas Practice 1980); 2 Wigmore, Evidence sec. 575 (Chadbourn Revision 1979). The theory behind this exclusion was that the best method for securing the truth was to exclude from consideration the testimony of certain types of witnesses who had a motive to lie. Id. This disqualification rule was thought to be harsh, however, since it often created injus-

tice and ignored the probability that the jurors could arrive at the truth by considering the witness's interest in the outcome of the suit. Ray, supra, at sec. 337. Thus, in 1843, England abrogated all forms of disqualification because of interest. Texas, too, renounced the general disqualification of interested witnesses by statute. 1871 Gen. Laws, ch. 105, sec. 1 at 108; 6 H. Gammel, Laws of Texas 1010 (1898).[2] However, section 2 of that act carried forth a vestige of the old common law rule as it promulgated what is commonly referred to as the Dead Man's Statute, now article 3716.

The purpose of the Dead Man's Statute is threefold: (1) to put the parties on an equal footing at trial, (2) to prevent one, to the detriment of the other, from taking advantage of the fact that the lips of the deceased have been sealed, and (3) to render incompetent testimony as to conversations and transactions with a deceased in a suit in which the deceased might deny the conversations and transactions if he were alive. The test has been stated as: If the witness offered should testify falsely, could the deceased, if living, controvert it by his own personal knowledge? Dakoff v. National Bank of Commerce, 254 S.W.2d 550 (Tex. Civ.App.—Dallas 1952, writ ref'd).

The Dead Man's Statute has been severely criticized by leading legal scholars in the field of evidence. See Ray, supra, sec. 321–2 (Texas Practice 1980); Wigmore, supra, sec. 478; McCormick, Evidence sec. 65 (2d ed. 1972); Morgan, Some Problems of Proof Under the Anglo-American System of Litigation, at 187 (1956); Cheek, "Testimony As to Transactions With Decedents," 5 Tex.L.Rev. 149, 172 (1927). Writing of the anachronistic Dead Man's Statute, Professor Ray states, "In seeking to avoid the *possibility* of injustice of one side, they work a *certain* injustice to the other." Ray, "Dead Man's Statutes" 24 Ohio St.L.Rev. 89, 107 (1963). However, perhaps the strongest criticism of the Dead Man's Stat-

2. Article 3714 reads:
   No person shall be incompetent to testify on account of color, nor because he is a party to a suit or proceeding or interested in the issue tried. [Acts 1871, p. 108, P.D. 6826.]

ute has come from Dean Wigmore who writes, "As a matter of policy, this survival of a part of the now discarded interest qualification is deplorable in every respect; for it is based on a fallacious and exploded principle, it leads to as much or more false decision than it prevents, and it encumbers the profession with a profuse mass of barren quibbles over the interpretation of mere words." Wigmore, *supra*, sec. 578 at 822.

■ The Dead Man's Statute specifically provides that the disqualification of a surviving party to transactions with the deceased may be waived when that witness is "called to testify thereto by the opposite party." A waiver occurs when the testimony of a deceased at a former trial or deposition is offered at a subsequent trial by the deceased's executor. *O'Neill v. Brown*, 61 Tex. 34, 38 (1884); *Runnels v. Belden*, 51 Tex. 48, 50 (1879); *Griffin v. Griffin*, 306 S.W.2d 196, 200 (Tex.Civ.App.—Waco 1957, writ dism'd); *Parker v. Miller*, 258 S.W. 602, 603 (Tex.Civ.App.—Austin 1923) rev'd on other grounds 268 S.W. 726 (1925). A waiver also occurs when the executor testifies to acts and statements of his deceased. *Hurley v. Lockett*, 72 Tex. 262, 12 S.W. 212, 215 (1888); *Marshall v. Campbell*, 212 S.W. 723, 725 (Tex.Civ.App.—Fort Worth 1919, no writ). When the party entitled to the protection of the statute calls the adverse party to the stand and asks about a transaction with or statement by the decedent, the statute is waived as to that transaction. *Seaman v. Seaman*, 425 S.W.2d 339, 342 (Tex.1968). This is likewise true when the matters are inquired about in a deposition, *Allen v. Pollard*, 109 Tex. 536, 212 S.W. 468 (1919), in written interrogatories, *Muhm v. Davis*, 580 S.W.2d 98, 101 (Tex.Civ.App.— Houston [1st Dist.] 1979, writ ref'd n. r. e.); *Denbo v. Butler*, 523 S.W.2d 458, 460 (Tex. Civ.App.—Houston [1st Dist.] 1975, no writ); or in requests for admissions, *Burris v. Levy*, 302 S.W.2d 171, 174 (Tex.Civ.App. —San Antonio 1957, writ ref'd n. r.e.).[3] A waiver does not occur, however, when the

opposite party merely cross-examines the witness at trial, in deposition, or by interrogatories about matters brought out over his objection on direct examination. *Chandler v. Welborn*, 156 Tex. 312, 294 S.W.2d 801, 809 (1956). The applicability of the statute is determined as of the time of trial, not when the testimony is elicited. *Chandler v. Welborn, supra; Pugh v. Turner*, 145 Tex. 292, 197 S.W.2d 822, 825, 172 A.L.R. 707 (1946).

■ Several courts of civil appeals have held that when the deceased has testified fully regarding a transaction, the reason for the rule does not apply, and the availability of that testimony renders the surviving witness competent to testify regarding the same matters covered by the decedent's testimony. *McCormick v. Rhoades*, 357 S.W.2d 595, 599 (Tex.Civ.App.—Austin 1962, writ ref'd n. r. e.); *Sears, Roebuck and Co. v. Jones*, 303 S.W.2d 432, 436 (Tex.Civ.App.— Waco 1957, writ ref'd n. r. e); *Shaller v. Allen*, 278 S.W. 873, 876 (Tex.Civ.App.— Amarillo 1925, no writ). As the court said in *Shaller*:

> . . . the rule should not be applied after the testimony of the deceased has been given and preserved and is at the service of either party; otherwise the statute, instead of being a safeguard to truth, that justice may prevail, could become a rule by which the truth could be suppressed.

A contrary result was reached by the court in *Ivey v. Bondies*, 44 S.W. 916 (Tex. Civ.App. 1897, writ ref'd). There, as in this case, the surviving party to the transaction introduced the deposition testimony of the deceased and then sought to testify himself regarding the transaction. The *Ivey* court held that the surviving party could not bootstrap his own testimony by offering the prior testimony of the deceased, and that a waiver could only occur when the executor offers the deceased's testimony at trial.

---

3. In *Fleming v. Baylor Univ. Medical Center*, 554 S.W.2d 263, 266 (Tex.Civ.App.—Waco 1977) writ ref'd n. r. e. per curiam 561 S.W.2d 797 (Tex.1977), this court reserved judgment on the language of the court of civil appeals regarding waiver. We now express approval of that language of the court of civil appeals.

Mrs. Foster's executor, Roshton, argues that *Ivey* is controlling in the present case. The court of civil appeals reasoned that not only was there no waiver because of *Ivey*, but also since at the time of Mrs. Foster's testimony, there was no executor and the Dead Man's Statute had no application to the case; therefore, there could be no waiver of a right that did not then exist.

This court has narrowly construed the Dead Man's Statute. *See Harper v. Johnson*, 162 Tex. 117, 345 S.W.2d 277 (1961); *Pugh v. Turner*, 145 Tex. 292, 197 S.W.2d 822, 825 (1946). It is our view that when a deceased has previously testified fully as to a transaction, the legislature did not intend for the statute to disqualify the survivor from testifying about that transaction so long as the deceased's testimony is available to both parties and both sides to the suit had an opportunity to examine the deceased as to the transaction when the testimony was given. As noted, the Dead Man's Statute sought to prevent one party from having an unfair advantage over another whose lips had been sealed by death by excluding testimony against a decedent which he might deny or contradict if he were living. Consequently, there is no reason to apply the rule when the testimony of the deceased as to a given transaction has been given and preserved. The Dead Man's Statute would apply, however, if the deceased's testimony *might* have been preserved but was not. *Wooton v. Jones*, 286 S.W. 680, 686 (Tex.Civ.App.—Austin 1926, writ dism'd). As preserved, the testimony is available to either side of the controversy. Moreover, the availability of videotaped depositions can be effectively used to present a "live" witness to the trier of fact at trial. We disapprove *Ivey v. Bondies* to the extent of its conflict.

■ A further reason exists to uphold the admissibility of Lewis's testimony. When Lewis's attorney originally offered the deceased Mrs. Foster's testimony from the prior hearing, the executor did not object. Rather, he then offered his direct examination of the deceased Mrs. Foster. Even if the Dead Man's Statute were to apply to this case, by offering the testimony of Mrs. Foster, the executor waived the statute. The rule of *Chandler v. Welborn* that cross-examination of a witness does not waive the statute is inapplicable because the testimony of Mrs. Foster first offered by Lewis was received in evidence without objection. Moreover, the stipulation of the parties that Mrs. Foster's testimony "can and will be used in future proceedings in lieu of her deposition" was without qualification or reservation of any objections. It was therefore binding on both Mrs. Foster and her executor. The case of *Smith v. Burroughs*, 34 S.W.2d 364 (Tex. Civ.App.—Austin 1931, writ dism'd), holding that failure to object to improper testimony does not waive rebuttal evidence which is objected to, is not consistent with other cases on waiver and is disapproved.

The judgment of the court of civil appeals is reversed and the judgment of the trial court affirmed.