COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| THOMAS J. FRAGA, | | No. 08-06-00295-CV |
| | § | |
| Appellant, | | Appeal from |
| | § | |
| v. | | County Court at Law No. 5 |
| | § | |
| CARMEN DRAKE and JAMES DRAKE | | of El Paso County, Texas |
| and PI CROWLEY, INDEPENDENT | § | |
| CO-EXECUTORS OF THE ESTATE OF | | (TC # 2002-2160) |
| JOYCE DOBKINS, DECEASED, | § | |
| | | |
| Appellees. | § | |

**O P I N I O N**

Thomas J. Fraga appeals a summary judgment granted in favor of Carmen Drake, James Drake, and Pi Crowley, Independent Co-Executors of the Estate of Joyce Dobkins, Deceased. For the following reasons, we affirm.

**FACTUAL SUMMARY**

In 1996, Thomas J. Fraga and his wife[1] purchased a home from Carmen Drake and Joyce Dobkins. Drake and Dobkins agreed to finance the entire purchase price of $169,000. Under the terms of the Earnest Money Contract, Fraga expressly accepted the property "as is" and Drake and Dobkins were not responsible for any repairs. The parties also executed a Property Condition Addendum which gave Fraga the right to have the property inspected:

> NOTWITHSTANDING ANY CONTRARY PROVISION IN THE EARNEST
> MONEY CONTRACT OR THIS ADDENDUM, SELLER IS REQUIRED TO
> MAKE NO REPAIRS, TREATMENT OR RESTORATION OF THE PROPERTY

---

[1] Fraga and his wife subsequently divorced and she is not a party to this case.

NOR PAY FOR SAME.  BUYER SHALL HAVE THE RIGHT TO INSPECT THE PROPERTY AS AFORESAID, AND SHALL, AT CLOSING, TAKE THE PROPERTY 'AS IS'.

Fraga hired an architect, David Holguin, to perform the inspection.  In an August 6, 1996 letter sent through their attorney, Drake and Dobkins disclosed that they had discovered a leak in the indoor swimming pool after they signed the Earnest Money Contract.  The letter advised Fraga that he "may treat the pool inspection as part of the inspections which he will undertake, and reject the contract if the condition is not to his liking."  On August 22, 1996, Holguin's firm, The El Paso Group, issued its report detailing the inspection and recommending repairs to the property.  Holguin found that the roof was leaking above the garage and had damaged the garage ceiling.  He recommended that this portion of the roof should be replaced; the roof above the pool was leaking and should be replaced; the pool room's south and east walls had been damaged by rain run-off by ponding on the southeast corner of the property; there was a crack in the pool that should be repaired; and the east wall by the pool room had a major amount of movement which required stabilization of the foundation.  Gonzalez Construction was hired to perform the repairs recommended by Holguin.  According to the proposals, Gonzalez Construction would install new roof sections, repair the pool, and stabilize the footing on the south and east walls by removing the existing concrete and installing new concrete.  These repairs were completed in the fall of 1996 and the sale closed on December 31, 1996.  Fraga executed a promissory note and a deed of trust.

Almost immediately after he moved into the home on January 1, 1997, Fraga began having problems with the house shifting or settling and cracks appeared in the house and the pool.  In July 1997, he obtained multiple estimates to repair the pool and three broken trusses in the roof.  On August 22, 1997, Fraga's attorney sent a demand letter to Gonzalez Construction complaining that the company had not properly performed the repair work.  He then filed suit against the company on

December 9, 1997. In April 1998, Fraga settled his claims and pursuant to the settlement agreement, Gonzalez Construction performed substantial repairs on the property at the company's own expense.

Fraga continued to have the same problems with the property, including cracks in the house and the pool. He had additional repairs performed in 1999, 2000, 2001, and 2002. Fraga testified at his deposition that in February 2002, Drake told him--in the presence of Dobkins--that they sold him the house because they were tired of making repairs. On February 20, 2002, Drake and Dobkins sent a demand letter to Fraga based on his non-payment and default on the note. On May 8, 2002, a notice of acceleration was sent and the property was posted for foreclosure on June 4, 2002. Fraga filed suit against Drake and Dobkins on June 3, 2002 seeking injunctive relief and alleging DTPA and fraud claims based on allegations that the bedrock and soil beneath the house were shifting and that the property has structural defects which render it worthless. The trial court denied injunctive relief.

Appellees filed a motion for summary judgment asserting the affirmative defense of limitations and alleging that Fraga's suit was barred by the "as is" provision in the contract. Appellees additionally alleged that Fraga lacked evidence on one or more elements of each of his claims. In his response, Fraga urged the fraudulent concealment doctrine in avoidance of the limitations defense. The trial court sustained Appellees' objections to portions of Fraga's summary judgment evidence and granted summary judgment in Appellees' favor without specifying the basis for the ruling.

## EXCLUSION OF EVIDENCE

In Issues One and Two, Fraga contends that the trial court abused its discretion by sustaining Appellees' objections to his ten-page affidavit offered in support of his summary judgment response. In his brief, he identifies fifteen sentences which were erroneously excluded from his affidavit:

10(a), 10(b), 11(a), 11(g), 13(c), 13(d), 14(a), 14(b), 14(c), 15(a), 16(e), 20(e), 20(h), 22(c), and

25(b).[2]  We detail these sentences below together with the Appellees' objections.

> 10(a):  During this entire process of purchasing and owning the house, from the contract signing to the written demand in July 1996 of Mr. Crout for the Defendants to deliver the Seller's Disclosure of property condition, to the report of David Holguin and the proposals and work of contractor J. Gonzalez, Defendants did not disclose to my wife or me what they knew about the problems with the property in 1996 until February 2002 when they told me that 'they sold me the house because they were tired of making those repairs.'

> 10(b):  They continued to deceive my wife and myself because when the pool began losing water again, the cracks in the pool reappeared and the rock wall and the foundation would crack again and I would tell them about these problems, they would not tell us what they knew about their problems with the property.

> 11(a):  In the summer of 1997, the Defendants then convinced us that the fault lay with contractor J. Gonzalez and that we should seek some kind of legal action against him.

> 11(g):  They also chose to remain silent about what they knew about the problems with the house.

Appellees objected to 10(a), 10(b), 11(a), and 11(g) on the following grounds:  Rule 601(b);

speculation and conjecture; no personal knowledge; assumes untrue facts or facts not in evidence;

conclusory.

> 13(c)  In late 2001, when I was telling them that I was having to make the same repairs over and over again, Defendants told me that I did not need to make the mortgage payments to them and that I could use that money instead to pay for the repairs to the property.

> 13(d):  They also began to convince me that I should sell the property after the repairs were completed and get out form [sic] under all of these problems.

> 14(a):  By that time I had given the Defendants two checks for two months payments of which they said that they would hold on to and not deposit.

> 14(b):  Within a week or so they had informed me that they had accidentally

---

[2]  To aid the trial court in ruling on the objections, Appellees assigned a number to each paragraph and a number to each sentence in Fraga's affidavit.  We will utilize those same designations in this opinion.

deposited one of the checks, which had subsequently bounced.

14(c): The Defendants then told me not to worry and that they would not deposit the other check and that they would hold on to the check that had bounced and not deposit it again.

15(a): Finally, in February 2002 they told me that 'they sold me the house because they were tired of making those repairs.'

Appellees objected to 13(c), 13(d), 14(a), 14(b), 14(c), and 15(a) on these grounds: Rule 601(b); fails to specify which Defendant said what.

16(e): That was the bottom line of their confession in February 2002.

Appellees made the following objections to 16(e): Conclusory and speculative; assumes untrue facts or facts not in evidence; self-serving; Rule 601(b); fails to specify which Defendant said what; no personal knowledge.

20(e): They then told me and admitted that, in fact, they had rebuilt the wall on many occasions in the past.

Appellees raised the following objections to 20(e): Rule 601(b); fails to specify which Defendant said what or specific statements; assumes untrue facts or facts not in evidence.

20(h): At that time, in the same meeting which took place at their residence, during the same conversation, they also confessed and admitted that they sold me the property because they were tired of doing those repairs, the same repairs that I had been forced to make several times since 1998.

Appellees made the following objections to 20(h): Rule 601(b); fails to specify which Defendant made which alleged statement; fails to specify the alleged statements; conclusory.

22(c): After the Defendants made disclosure to me of the true facts in February 2002 and I filed suit.

Appellees objected as follows to 22(c): Rule 601(b); fails to specify the "true facts" or which Defendant made what alleged statement.

25(b): Then, when I was not making the monthly note payments because they told

me I could use the money for the repairs instead, and they made their confession to me in February 2002, I then filed suit.

Appellees lodged the following objections to 25(b): Rule 601(b); fails to specify which Defendant allegedly made what statement; fails to specifically state the alleged "confession;" conclusory.

With respect to the Rule 601(b) objections, the motion more specifically asserted that the summary judgment evidence should be struck because it was an attempt to introduce uncorroborated statements of Dobkins in violation of Rule 601(b). The trial court sustained Appellees' objections to these fifteen sentences. Texas Rule of Evidence 601(b), also known as the "Dead Man's Rule," provides that:

> In civil actions by or against executors, administrators, or guardians, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the others as to any oral statement by the testator, intestate, or ward, unless that testimony to the oral statement is corroborated or unless the witness is called at the trial to testify thereto by the opposite party; and, the provisions of this article shall extend to and include all actions by or against the heirs or legal representatives of a decedent based in whole or in part on such oral statement.

TEX.R. EVID. 601(b).

Texas courts construe the Dead Man's Rule narrowly. *Quitta v. Fossati*, 808 S.W.2d 636, 641 (Tex.App.--Corpus Christi 1991, writ denied), *citing Lewis v. Foster*, 621 S.W.2d 400, 404 (Tex. 1981). The rule does not prohibit testimony concerning statements by the deceased that are properly corroborated. *See id.* Corroborating evidence must tend to support some of the material allegations or issues that are raised by the pleadings and testified to by the witness whose evidence is sought to be corroborated. *Id*. It may come from any other competent witness or other legal source, including documentary evidence. *Id*. Corroborating evidence need not be sufficient standing alone, but must tend to confirm and strengthen the testimony of the witness and show the probability of its truth. *Id*. For example, it is sufficient if the corroborating evidence shows conduct by the

deceased that is generally consistent with the testimony concerning the deceased's statements. *Id*.

Fraga argues that Appellees waived the Rule 601(b) objection to portions of his affidavit because they did not object to Fraga's deposition testimony on the same ground. We agree in part. Objections to the following sentences are waived because Appellees did not raise a Rule 601(b) objection when Fraga testified at his deposition to statements made by both defendants or by Dobkins, and they utilized Fraga's deposition as summary judgment proof: 10(a), 13(c), 15(a), 16(e), 20(h), 22(c), and 25(b). However, Appellees raised other objections to 10(a), 16(e), 20(h), 22(c), and 25(b) which will be addressed below. Because no other objections were made to 13(c) and 15(a), the trial court erred by sustaining Appellees' Rule 601(b) objection to 13(c) and 15(a).

We first consider whether the trial court properly sustained the Rule 601(b) objection made with respect to 10(b), 11(a), 11(g), 13(d), 14(a), 14(b), 14(c), and 20(e). Fraga argues that the statements he attributes to "Defendants" are corroborated because he stated in his deposition that the conversations occurred with both defendants. We fail to perceive how this serves to corroborate the objectionable statements. The trial court did not abuse its discretion by sustaining the Rule 601(b) objection to these sentences in Fraga's affidavit.

We now consider whether the trial court's ruling is correct on some other theory. Appellees objected to 10(a) on grounds that it constituted speculation and conjecture, it was not based on Fraga's personal knowledge, it assumed untrue facts or facts not in evidence, and it was conclusory. The statement that Drake and Dobkins did not disclose to Fraga what they knew about the problems with the property is speculative and based on conjecture. He takes their statement that they sold the house because they were tired of making repairs and speculates that they had full knowledge of the home's structural defects. The trial court did not abuse its discretion by sustaining these objections to 10(a).

In addition to the Rule 601(b) objection, Appellees objected to 16(e) on grounds that it was conclusory and speculative, it assumed untrue facts or facts not in evidence, it was self-serving, it failed to specify which defendant said what, and it was not based on Fraga's personal knowledge. Fraga stated that the "bottom line" of the defendants' 2002 "confession" is that they intentionally transferred their problems with the house to him. His brief does not address their objection that his statement is self-serving. For this reason alone, his complaint about the trial court's ruling is without merit.

Appellees objected to 20(h) because it failed to specify which Defendant made which alleged statement, it failed to specify the alleged statements, and it was conclusory. Affidavits in support of motions for summary judgment must be developed from someone with personal knowledge, set forth such facts that would be admissible in evidence, and establish that the affiant is competent to testify on the matters stated therein. TEX.R.CIV.P. 166a(f); *Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996). Affidavits consisting only of conclusions are insufficient to raise an issue of fact in response to a motion for summary judgment. *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984)(holding that a statement in an affidavit that "his contractual obligation had been modified" was nothing more than a legal conclusion and the affidavit should have gone further to specify factual matters such as the "time, place, and exact nature of the alleged modification"); *Residential Dynamics, LLC v. Loveless*, 186 S.W.3d 192, 198 (Tex.App.--Fort Worth 2006, no pet.). A conclusory statement is one that does not provide the underlying facts to support the conclusion. *Loveless,* 186 S.W.3d at 198. Other summary judgment established that Drake and Dobkins told Fraga that they sold him the house because they were tired of making repairs. Fraga's statement in his affidavit to that effect specifies the nature of the statement and is not conclusory. The trial court erred in sustaining Appellees' objections to 20(h).

Appellees objected to 22(c) on the grounds that the statement failed to specify the "true facts" to which it referred or which defendant made the statement. Appellees are correct that the statement does not specify what statements were made by the defendant. While another portion of the affidavit reflects that Drake and Dobkins told Fraga that they sold the house because they were tired of making repairs, it is not clear that Fraga is making reference to that statement in this portion of the affidavit. The trial court properly sustained Appellees' objection to 22(c).

Appellees objected to 25(b) on the grounds that it failed to specify which defendant made what statement, it failed to state the alleged "confession," and it was conclusory. As was the case with 22(c), the affidavit does not set forth the statements made by the defendants which Fraga characterizes as a confession. This statement is conclusory because it does not relate the underlying facts which support the conclusion. The trial court did not abuse its discretion is sustaining Appellees' objections to 25(b).

Because we conclude that the trial court erred in sustaining Appellees' objections to 13(e), 15(a), and 20(h), Issue One is sustained in part and overruled in part. But that does not end our inquiry because we must determine whether the stricken evidence would have raised a fact issue to preclude summary judgment. We will address this issue in the context of Issue Three.

### STATUTE OF LIMITATIONS

In Issue Three, Fraga argues that the trial court erred by granting summary judgment on the limitations ground because Appellees fraudulently concealed the existence of the tort, and thus, they are estopped from relying on limitations as a defense.

The standard of review for traditional summary judgment is well established. *Nixon v. Mr. Property Management Co., Inc.*, 690 S.W.2d 546, 548 (Tex. 1985). The moving party carries the burden of showing there is no genuine issue of material fact and it is entitled to judgment as a matter

of law. *Browning v. Prostok*, 165 S.W.3d 336, 344 (Tex. 2005); *Duran v. Furr's Supermarkets, Inc.*, 921 S.W.2d 778, 784 (Tex.App.--El Paso 1996, writ denied). Evidence favorable to the non-movant will be taken as true in deciding whether there is a disputed issue of material fact. *Fort Worth Osteopathic Hosp., Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004); *Duran*, 921 S.W.2d at 784. All reasonable inferences, including any doubts, must be resolved in favor of the non-movant. *Id*.; *Duran*, 921 S.W.2d at 784. The question on appeal is not whether the summary judgment proof raises fact issues as to required elements of the movant's claim, but whether the summary judgment proof establishes there is no genuine issue of material fact as a matter of law as to one or more elements of the movant's claim. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex. 1970); *Duran*, 921 S.W.2d at 784.

When the movant is the defendant and provides summary judgment evidence disproving at least one essential element of the plaintiff's cause of action, summary judgment should be granted. *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995); *Provencio v. Paradigm Media, Inc.*, 44 S.W.3d 677, 680 (Tex.App.--El Paso 2001, no pet.). Likewise, a defendant who conclusively establishes each element of an affirmative defense is entitled to summary judgment. *Id*.; *Provencio*, 44 S.W.3d at 680. If this burden is met by the defendant, then the plaintiff must raise a genuine issue of material fact on the negated element of the cause of action or must produce evidence raising a general issue of material fact in avoidance of the affirmative defense. *Provencio*, 44 S.W.3d at 680. Where the trial court's judgment does not specify the ground or grounds relied upon for its ruling, the summary judgment must be affirmed if any of the theories advanced is meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989); *Garcia v. El Paso Ltd. Partnership*, 203 S.W.3d 432, 435 (Tex.App.--El Paso 2006, no pet.).

A defendant moving for summary judgment on the affirmative defense of limitations has the

burden to conclusively establish that defense. *KPMG Peat Marwick v. Harrison County Housing Finance Corp.*, 988 S.W.2d 746, 748 (Tex. 1999); *Edwards v. Mesa Hills Mall Co. Ltd. Partnership*, 186 S.W.3d 587, 590 (Tex.App.--El Paso 2006, no pet.). The defendant must (1) conclusively prove when the cause of action accrued, and (2) negate the discovery rule, if it applies and has been pled or otherwise raised. *Id.* If the movant establishes that the statute of limitations bars the action, the non-movant must then adduce summary judgment proof raising a fact issue in avoidance of the statute of limitations. *Id.*

The limitations period for a DTPA action is two years. TEX.BUS.&COMM.CODE ANN. § 17.565 (Vernon 2002). The limitations period for fraud is four years. TEX.CIV.PRAC.&REM.CODE ANN. § 16.004(a)(4)(Vernon 2002). Ordinarily, the statute of limitations begins to run when a particular cause of action accrues. *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996); *Mitchell Energy Corp. v. Bartlett*, 958 S.W.2d 430, 436 (Tex.App.--Fort Worth 1997, pet. denied). Determining what rule of accrual to apply is a question of law. *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex. 1990); *Mitchell Energy*, 958 S.W.2d at 436. As to the defendant's burden under the first prong of the test stated in *KPMG Peat Marwick*, a cause of action accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later. *S.V.*, 933 S.W.2d at 4; *Tanglewood Terrace, Ltd. v. City of Texarkana, Texas*, 996 S.W.2d 330, 336 (Tex.App.--Texarkana 1999, no pet.).

Appellees conclusively established that Fraga's DTPA and fraud actions accrued no later than July 22, 1997. Fraga noticed cracks in the pool, cracks in the walls of the home, and roof leaks some time prior to this date and he began obtaining estimates on July 22, 1997 to repair the damages. The burden shifted to Fraga to adduce summary judgment proof raising a fact issue in avoidance of the statute of limitations. Accrual of a cause of action is deferred in two types of cases: (1) those

involving fraud or fraudulent concealment and (2) those in which the injury is "inherently undiscoverable" and is "objectively verified." *S.V.*, 933 S.W.2d at 6; *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex. 1996). Fraga relies on fraudulent concealment to defer the accrual of his causes of action against Appellees.

Fraudulent concealment works to estop a defendant from asserting limitations as a defense because "a person cannot be permitted to avoid liability for his actions by deceitfully concealing wrongdoing until limitations has run." *S.V.*, 933 S.W.2d at 6. Fraudulent concealment tolls the statute of limitations until the injured party, using reasonable diligence, discovered or should have discovered the injury. *KPMG Peat Marwick*, 988 S.W.2d at 750. The elements of fraudulent concealment are (1) the existence of the underlying tort; (2) the defendant's knowledge of the tort; (3) the defendant's use of deception to conceal the tort; and (4) the plaintiff's reasonable reliance on the deception. *Glover v. Union Pacific Railroad Co.*, 187 S.W.3d 201, 217 (Tex.App.--Texarkana 2006, pet. denied); *Mitchell Energy Corp. v. Bartlett*, 958 S.W.2d 430, 439 (Tex.App.--Fort Worth 1997, pet. denied). A party asserting fraudulent concealment as an affirmative defense to the statute of limitations has the burden to raise it in response to the summary judgment motion and to come forward with summary judgment evidence raising a fact issue on each element of the fraudulent concealment defense. *KPMG Peat Marwick*, 988 S.W.2d at 748.

Fraga asserts that Drake and Dobkins made misrepresentations in the Sellers Disclosure Notice when they stated that they did not know of any defects in the pool, the fences and rock walls, the roof covering, the exterior walls, the roof, the ceilings, the foundation/slabs, the floors, and the basement, and that none of these items needed repair. Fraga ignores the letter sent by Drake and Dobkins in August of 1996 advising that they had discovered the pool was leaking and informing Fraga that he should investigate. Following this disclosure, Fraga hired David Holguin to conduct

an inspection of the property. Holguin performed that inspection and noted problems with the roof, the ceiling and the pool which required repair, and that an east wall by the pool had major movement and required stabilization. Based on these findings, Drake and Dobkins hired a contractor to cause repairs to be made to the property. Thus, Drake and Dobkins disclosed a significant problem with the property in 1996, and given Holguin's report, Fraga was aware that problems existed. A few months later, in the summer of 1997, cracks reappeared in the pool and walls and Fraga had to make repairs to the pool and roof. At that point, Fraga knew, or should have known through the exercise of reasonable diligence, that there were problems with the home and he had suffered a legal injury. While Fraga did not know of the full extent of the problems with the home, he certainly knew or should have known that he had suffered a legal injury.

Appellees conclusively established that Fraga's causes of action accrued no later than July 22, 1997 and he filed suit outside of the relevant limitations periods for fraud and DTPA claims. Fraga did not carry his burden of adducing summary judgment evidence raising a fact issue in avoidance of the statute of limitations. The portions of Fraga's affidavit which were erroneously stricken by the trial court do not raise a fact issue with respect to fraudulent concealment. We conclude that the trial court properly granted summary judgment in favor of Appellees on both the DTPA and fraud claims. *See Smith v. Gray*, 882 S.W.2d 103, 105 (Tex.App.--Amarillo 1994), *reviewed denied*, 907 S.W.2d 44 (Tex. 1995)(affirming dismissal of plaintiff's DTPA suit based on limitations where plaintiff discovered cracks and separations in walls shortly after moving into the home, but plaintiff waited more than two years to file DTPA suit based on allegations that prior owners failed to disclose the defective condition; court rejected argument that plaintiff did not discover nature of his injury until he discovered that it was sewer leak which caused the damage to the home or until he discovered that defendants knew about the sewer system leak at the time they

sold the home); *see also J.M. Krupar Construction Co., Inc. v. Rosenberg,* 95 S.W.3d 322, 329-30 (Tex.App.--Houston [1st Dist.] 2002, no pet.)(plaintiff purchased new home and noticed cracks in exterior and interior walls a few months after moving into the home, but did not discover that cause of the damages was builder's failure to build home on a pad of select fill; plaintiff filed suit outside of the limitations and argued that he was not aware of his injury until he did the core drilling; court held that plaintiff knew or should have known of the wrongful injury when he first saw the cracks and had repairs performed). We overrule Issues Two and Three. Having found that the trial court properly granted summary judgment on the limitations issue, it is unnecessary to address Fraga's arguments regarding the other summary judgment grounds. It is also unnecessary to address Issue Six which pertains to the trial court's order striking the expert report of James Booth because the expert report does not raise a fact issue on the fraudulent concealment defense to limitations. The judgment of the trial court is affirmed.

July 31, 2008

_____
ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Carr, JJ.