In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-08-00348-CV


____________________



ALICIA FOWLER, Appellant



V.



DONALD R. SAMUEL and 


THE JASPER AND NEWTON FAMILY CLINIC, P.A., Appellees






On Appeal from the 1-A District Court 


Jasper County, Texas


Trial Cause No. 27,644






MEMORANDUM OPINION


 Alicia Fowler appeals the take-nothing judgment entered on the jury's verdict in a
medical malpractice suit against Donald R. Samuel and The Jasper and Newton Family
Clinic, P.A. In four issues, Fowler contends: (1) the jury's failure to find Samuel negligent
is against the great weight and preponderance of the evidence; (2) the trial court erred in
refusing to admit into evidence the report prepared by Fowler's expert; (3) the trial court
erred in excluding testimony from Samuel's former secretary; and (4) the trial court erred in
refusing to grant a default judgment against the clinic. We affirm the judgment. 

 Samuel, a gynecologist, performed a total abdominal hysterectomy on Fowler on
February 11, 2005. Following the surgery, Fowler complained of abdominal pain in several
visits with Samuel, including a visit on March 22, 2005, when Samuel diagnosed a urinary
tract infection. On March 24, 2005, Fowler presented to a hospital emergency room
complaining of abdominal pain. When a CT scan and a cystoscopic examination revealed
a blockage of the right ureter, Samuel was called to the hospital. Samuel referred Fowler to
a urologist who performed the repair. In her lawsuit, Fowler alleged Samuel was negligent
because he was aware that he had damaged the ureter during the surgery and had attempted
a repair by using dissolvable sutures, but he failed to inform Fowler of the injury until after
she presented in the hospital emergency room with complications involving her ureter
subsequent to her release. (1) 

 On appeal, Fowler contends the overwhelming weight and preponderance of the
evidence establishes that Samuel breached the standard of care because he was aware that
he had damaged the ureter during the surgery and attempted to repair it with dissolvable
sutures, but failed to inform Fowler of the injury until after she presented in the hospital
emergency room with complications involving her ureter. According to Fowler, a proper
intraoperative repair would have prevented later hospitalizations and procedures. 

 To prevail at trial on her claim of medical malpractice, Fowler was required to prove
that a physician and patient relationship existed, Samuel had a duty to comply with a specific
standard of care, that Samuel breached that standard of care, that Fowler was injured, and
that there was a causal connection between Samuel's breach of the standard of care and
Fowler's injury. See Hawkins v. Walker, 238 S.W.3d 517, 522 (Tex. App--Beaumont 2007,
no pet.). We must consider all of the evidence, including any evidence contrary to the
verdict. Plas-Tex., Inc. v. U.S. Steel Corp., 772 S.W.2d 442, 445 (Tex. 1989). The jury is
the sole judge of the credibility of the witnesses and the weight to be given their testimony. 
Golden Eagle Archery, Inc. v. Jackson, 116 S.W.3d 757, 761 (Tex. 2003). Because Fowler
is challenging the factual sufficiency of the evidence supporting an adverse finding on which
she bore the burden of proof, we may reverse the judgment only if the jury's adverse finding
is against the great weight and preponderance of the evidence. Dow Chem. Co. v. Francis,
46 S.W.3d 237, 242 (Tex. 2001). 

 Samuel did not mention an injury to the ureter in the operative report dictated three
days after surgery. Asked if he was aware of any complication when he performed the
surgery, Samuel replied that he was not. Samuel testified that the surgery went smoothly and
that they "encountered no problem during the case that I or the operative team was aware of."
Progress notes of post-operative visits include complaints that Fowler was experiencing
constipation, nausea and vomiting. On March 22, 2005, Fowler presented with abdominal
swelling and tenderness and super pubic tenderness. Urinalysis revealed a urinary tract
infection. The occlusion of the ureter was discovered two days later by another doctor. 

 Fowler and Samuel provided divergent testimony regarding their conversation at the
hospital on March 24, 2005. Samuel testified on direct examination, as follows:

 Well, I essentially explained to her that the ureter had been injured and
that we were going to send her--Dr. Botros had tried to pass a stent, and he
couldn't get the stent through. So, we wanted to send her to a urologist in
Beaumont to see if he could put a stent and then eventually repair the ureter. 
But we would have to talk further with the urologist to see how--what
approach he would take to that repair.

 So--but I basically want to let her know that there was an inadvertent
injury to the ureter and that we were sending her for further evaluation and
workup by the urologist in Beaumont. 

 

 Fowler testified on direct examination, as follows: 


 A. When he first came in he stopped at the door, and he talked to my
mom. Then he came to my right-hand side of my bed, and he explained to me
what had happened. And then he told me--he explained that he did not
understand because he used dissolvable stitches, and the stitch did not
dissolve. 


 . . . .


 Q. What was the part about--something was going to dissolve?


 A. He told me that he did not understand because he used dissolvable
stitches, and it should have dissolved.


 Q. What was he talking about then?


 A. I guess when he repaired urethra [sic]. When he repaired the tube
from the kidney to the bladder.


 Q. Before he said anything about dissolvable stitches did he say
anything to you about what had happened?


 A. No, sir.


 Q. He didn't tell you he nipped your ureter?


 A. He told me he had nipped it. He told me he had nipped the urethra
[sic]. The ureter or whatever it was. The tube between the kidney and the
bladder. But he did not understand because it should have dissolved.


 Q. In other words he used dissolvable stitches to patch it up?


 A. Yes, sir.


 Samuel's expert testified that almost all hysterectomies are performed using
dissolvable sutures. The same witness testified that from his review of Fowler's records he
believed the ureter was completely occluded and had been either tied off completely or the
tissue around it crushed the ureter to the point that there was no opening. According to the
expert witness, "[w]here this ureter was injured is an area that you would not be able to
recognize it at the time of surgery." He further testified that Samuel could only have known
of the injury to the ureter by taking an x-ray or cystoscopy; because Samuel did not perform
those studies, the expert concluded Samuel did not know that he had injured the ureter. 

 Fowler evidently understood Samuel to mean that he had severed the ureter during the
surgery and repaired it with dissolvable sutures. The multiple definitions of the verb "nip"
include "to catch hold of and squeeze tightly between two surfaces, edges, or points" and "to
sever by or as if by pinching sharply or biting." Webster's Third New International
Dictionary 1529 (2002). Thus, an admission by Samuel that he "nipped" the ureter is not
necessarily an admission that he severed the ureter and sutured the ureter to repair it. 
Assuming the jury found Fowler's version of the conversation to be credible, the jury could
believe that, consistent with Samuel's testimony, Samuel was merely informing the patient
of what had been determined through the tests performed on March 24, 2005, that is: in the
course of the hysterectomy Samuel had evidently sutured the ureter with dissolvable sutures. 

 Fowler contends that on cross-examination Samuel judicially admitted that he
breached the standard of care, as follows: 

 Q. But is it your testimony that you didn't tell her that you had cut the
ureter and that you had--couldn't understand why the dissolvable stitches
didn't dissolve?


 A. No, sir.


 Samuel's expert agreed that a breach of the standard of care would have occurred if
Samuel actually knew he cut the ureter and did not tell Fowler about it. On appeal, Fowler
argues that the combined effect of Samuel's admission and his expert's statement of the
standard of care establishes that Samuel breached the standard of care and that the breach
was a proximate cause of Fowler's injury. (2) We disagree. Plaintiff's counsel asked a
compound question: "is it your testimony that you didn't tell her that you had cut the ureter
and that you had--couldn't understand why the dissolvable stitches didn't dissolve?" The
jury could infer from Samuel's negative response to this question that Samuel was not
admitting to anything, but was merely denying that he spoke particular words that Fowler
claimed he had spoken. 

 In this case, the jury heard direct testimony from Samuel that he had no suspicion on
February 11, 2005, that an injury to the ureter had occurred. As the sole judge of the
credibility of the witnesses and the weight to be given their testimony, a reasonable jury
could accept Samuel's statement as true and determine that he did not, as Fowler claimed,
realize during surgery that the injury had occurred. We overrule issue one.

 With her second issue, Fowler complains that the trial court committed an outcome-determinative error by refusing to admit into evidence the report Fowler's expert prepared
pursuant to section 74.351 of the Civil Practice and Remedies Code. Fowler argues that
because she read part of the expert's deposition into the record during the trial, including a
reference to the report, she "used" the report and thus "waived" the statutory restrictions on
her use of the report. See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(t) (Vernon Supp.
2009)("If an expert report is used by the claimant in the course of the action for any purpose
other than to meet the service requirement of Subsection (a), the restrictions imposed by
Subsection (k) on use of the expert report by any party are waived."). (3) 

 When Fowler offered her expert's report into evidence, Samuel objected on the
grounds that the report was hearsay. The trial court sustained the objection. Fowler does not
mention the hearsay objection in her brief, nor does she present any argument or authority
to challenge the trial court's ruling on Samuel's hearsay objection. Fowler argues only that
the statutory restrictions on her use of the report were waived. Because the trial court
excluded the report on a ground that has not been challenged on appeal, we presume that the
trial court properly sustained the hearsay objection. See Fraga v. Drake, 276 S.W.3d 55, 62
(Tex. App.--El Paso 2008, no pet.) ("His brief does not address their objection that his
statement is self-serving. For this reason alone, his complaint about the trial court's ruling
is without merit."). Accordingly, we overrule issue two without considering whether
Fowler's offensive "use" of the report waived the statutory restrictions on her subsequent use
of the report over the objection of the opposing party.

 Fowler's third issue complains that the trial court erred in excluding the impeachment
and rebuttal testimony of Samuel's former secretary. Fowler's medical records were
admitted into evidence without objection before the start of testimony. During Fowler's
case-in-chief, before Samuel testified, Fowler testified that she received medical records
from Samuel's secretary. When Fowler tendered the records, Samuel objected that the
tendered document contained unexplained highlights and markings, the document was
hearsay, and it was cumulative of the records already admitted into evidence. Counsel for
Fowler addressed the court, as follows: 

 Judge, I would like to, if I may, first of all, Counsel mentioned that it
doesn't satisfy various rules--hearsay rules. I don't know what those rules are. 
But this is what my client just testified to she got from Dr. Samuel's office. 
And because I was just told about this last Thursday and looked at the records,
I didn't obviously--my client--neither I nor my client know who wrote those
notes in. So, what I've done is called to testify at the last minute because she
has not--her name wasn't in the disclosure because I didn't know what the
situation was with this record. So I've got the young lady who worked in Dr.
Samuel's office[.] . . .


 . . . .


 . . . And I would like to put her on the stand and let her look at this
record to, let's say, better authenticate it. 

 

 Counsel told the trial court that the records "have been lying dormant in my office
since '05" and asked to have the secretary identify the records. The trial court asked counsel
if he wanted "to put her on right now while the jury is out?" Counsel responded, "Yes, sir. 
And make it an offer of proof if you're not going to admit it in evidence." The trial court
stated "I'm not at this present time." On voir dire, the witness stated that the asterisk and the
word "Note" on the pages appeared to be written in Samuel's handwriting. The witness was
examined outside the presence of the jury, after which the trial court sustained Samuel's
objection to the proffered exhibit. Fowler's counsel stated, "Your Honor, I would like--for
the benefit of the record, I'd like to make an offer of proof, the testimony and the
identification of the handwriting to which [counsel for Samuel] objected on that as a part of
the record." When Samuel testified, Fowler did not show the excluded document to Samuel
or ask him if he made the additional marks and highlights on the pages. Fowler did not call
the witness on rebuttal. 

 Fowler neither identified the secretary as a potential witness nor identified any
allegedly altered medical records in her January 2007 discovery responses. At trial, counsel
acknowledged his awareness that the records and witness had not been disclosed in
discovery, but suggested that the nondisclosure should be excused because Fowler brought
the records to his attention the previous Thursday. 

 On appeal, Fowler cites Aluminum Company of America v. Bullock and contends that
the secretary's testimony was admissible even though not produced in discovery to rebut or
impeach the medical records. See Aluminum Co. of Am. v. Bullock, 870 S.W.2d 2,4 (Tex.
1994). A trial court's decision to exclude evidence is reviewed for abuse of discretion. 
Moore v. Mem'l Hermann Hosp. Sys., Inc., 140 S.W.3d 870, 873 (Tex. App.--Houston [14th
Dist.] 2004, no pet.). 

 (a) Exclusion of Evidence and Exceptions. A party who fails to make,
amend, or supplement a discovery response in a timely manner may not
introduce in evidence the material or information that was not timely disclosed,
or offer the testimony of a witness (other than a named party) who was not
timely identified, unless the court finds that:


 (1) there was good cause for the failure to timely make, amend,
or supplement the discovery response; or


 (2) the failure to timely make, amend, or supplement the
discovery response will not unfairly surprise or unfairly
prejudice the other parties. 


Tex. R. Civ. P. 193.6(a). The proffering party bears the burden of establishing good cause
and lack of surprise or prejudice See Tex. R. Civ. P. 193.6(b). By itself, inadvertence of
counsel is not good cause for a failure to comply with the discovery rules. Alvarado v. Farah
Mfg. Co., 830 S.W.2d 911, 915 (Tex. 1992). 

 In this case, the witness was offered on voir dire for the purpose of authenticating a
particular document. Fowler did not object to the admission of the medical records and the
excluded documents were not expressly offered for the purpose of impeaching any witness. 
Counsel admitted he had the records in his possession before the discovery responses were
filed. He also conceded that he was aware of the discrepancy between the records in his file
and the records that were ultimately admitted in evidence before the trial started. Fowler
testified that she obtained the records from the secretary in 2005, "right after . . . the
hysterectomy" and nothing in the record indicates Fowler was unaware of the identity of the
secretary or that she could not have determined her identity and the need for her testimony
through the exercise of reasonable diligence. The trial court could have reasonably
determined that the need for the secretary's testimony should have been anticipated. 
Alvarado, 830 S.W.2d at 916; see Tex. R. Civ. P. 192.3(d) ("A party may obtain discovery
of the name, address, and telephone number of any person who is expected to be called to
testify at trial. This paragraph does not apply to rebuttal or impeaching witnesses the
necessity of whose testimony cannot reasonably be anticipated before trial."). We overrule
issue three.

 Issue four contends the trial court erred in denying Fowler's motion for default
judgment against The Newton and Jasper Family Clinic, P.A. ("the Clinic"). We review the
denial of a motion for default judgment for abuse of discretion. Aguilar v. Livingston, 154
S.W.3d 832, 833 (Tex. App.--Houston [14th Dist.] 2005, no pet.). 

 Citation issued to Larry D. Brown as registered agent of the Clinic. The domestic
return receipt is signed by K. Williams. When a citation is served by registered or certified
mail, the return by the officer or authorized person must "contain the return receipt with the
addressee's signature." Tex. R. Civ. P. 107. The record does not affirmatively demonstrate
strict compliance with the service requirements. See Hubicki v. Festina 226 S.W.3d 405, 408
(Tex. 2007) (Appellee failed to establish return of service in absence of a return receipt with
appellant's signature, "as Rule 107 contemplates when service is effected under Rule
106(a)(2)."); Sw. Sec. Servs., Inc. v. Gamboa, 172 S.W.3d 90, 93 (Tex. App.--El Paso 2005,
no pet.). Accordingly, the trial court did not abuse its discretion in denying Fowler's request
for rendition of a default judgment against the Clinic. We overrule issue four and affirm the
judgment.

 AFFIRMED.

 

 __________________________________

 CHARLES KREGER

 Justice


Submitted on December 31, 2009

Opinion Delivered February 4, 2010


Before Gaultney, Kreger, and Horton, JJ.
1. Fowler's expert report stated that injury to the ureter was a known complication of
the surgery which, in and of itself, did not deviate from the standard of care.
2. Fowler also relies on her expert's report, but the report was not evidence because it
was not presented to the jury during the trial. 
3. The deposition except that Fowler read to the jury includes the following:


 ANSWER: "I mean I haven't been asked--thus far--by anybody to
evaluate her damages and the severity of her damages."


 QUESTION: "And you've not addressed that in your report either." 


 ANSWER: "No. All I mentioned is, again--that what you read is that
I've understood--based on my discussion--after she suffers from disability and
that's all I said."